LAURA I. E. BROWN *vs.* JOHN BAIL PIERCE.

GROUND RENTS—TERMINATION OF TENANCY—MERGER.

Where persons, entitled to the rents reserved after conveyance of the fee, assigned them absolutely to the remote grantee of the tenant, such grantee had good fee-simple title.

*(June 20, 1916.)*

Judges BOYCE and RICE sitting.
*Frank L. Speakman* for plaintiff.
*William T. Lynam* for defendant.
Superior Court, New Castle County.

AMICABLE ACTION IN COVENANT, No. 129, November Term, 1915.

On error in Supreme Court, No. 4, January Term, 1916.

Action by Laura I. E. Brown against John Bail Pierce to recover balance of purchase price for certain real estate in the City of Wilmington, which the defendant had agreed in writing to purchase from the plaintiff for the price therein mentioned, it being stipulated that the plaintiff would convey to the defendant "a good fee simple and marketable title, clear of all liens and encumbrances of every nature and character whatsoever of record prior to the twenty-fourth day of May A. D. 1912, excepting a mortgage now held by the 'Security Trust and Safe Deposit Company.'" * * * Upon tender of the deed for the premises, duly acknowledged, the defendant refused to accept the same, and declined to pay the balance of the purchase money, because the deed, if accepted, would not convey to him a good fee simple and marketable title, clear of al lliens and encumbrances, etc.

The case was submitted on an agreed statement of facts for the opinion and judgment of the court below. Judgment for plaintiff. Defendant brings error. Judgment affirmed.

The case stated in the court below (Judges BOYCE and RICE sitting) was in all essential elements as follows:

*First.* That Ethel P. Brown, single, by indenture under her hand and seal bearing date, etc., and recorded in the office for the recording of deeds, etc., at Wilmington, in and for New Castle County, in *Deed Record Y, Vol.* 23, *page* 109, granted and conveyed unto the said Laura I. E. Brown, her heirs and assigns all her estate right, title and interest in and to all that certain lot, piece or parcel of land, situate, etc., described, etc.

*Second.* That Thomas A. Brown made and published his last will bearing date, etc., which after his death was duly proved and allowed by the Register of Wills in and for Kent County, and is of record in the office of said Register of Wills, at Dover, wherein and whereby he did give and bequeath to his wife, Laura I. E. Brown, the plaintiff, the buildings and lot known as the "Eckel Building," located, etc., for her life and after the decease of his wife, he did give the said property to his daughter, the said Ethel Brown, if she should be living, but should the death of his daughter precede that of his wife, then he did give the said property to his wife, for her own use and benefit absolutely. The property mentioned and described in said will is the same property as is particularly bounded and described in the deed first mentioned.

*Third.* That Jacob Harvey Whiteman, by indenture under his hand and seal bearing date, etc., recorded in the recorder's office aforesaid, in *Deed Record Q, Vol.* 17, *page* 546, etc., granted and conveyed the said lot, piece or parcel of land to the said Thomas A. Brown, his heirs and assigns in fee.

*Fourth.* That Laura I. Eckel Brown and Thomas A. Brown, her husband, by indenture under their hands and seals bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record Q, Vol.* 17, *page* 543, etc., granted and conveyed the said lot, piece or parcel of land to the said Jacob Harvey Whiteman, his heirs and assigns in fee. .

*Fifth.* That Mary A. Eckel, widow of Henry Eckel, by indenture under her hand and seal bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record O, Vol.* 15, *page* 487, etc., granted and conveyed the said lot, piece or parcel of land to the said Laura I. Eckel Brown, her heirs and assigns in fee.

*Sixth.* That Henry Eckel made and published his last will bearing date, etc., which after his death was duly proved and allowed by the Register of Wills, in and for New Castle County and is of record in the office of said Register of Wills, at Wilmington, in *Will Record L, Vol.* 2, *page* 91, etc., wherein and whereby,

among other things, he did give, devise and bequeath all the residue of his estate, real, personal and mixed, unto his beloved wife, the said Mary A. Eckel, and to her heirs and assigns forever, giving and granting unto her full power and authority to sell all of the real estate that he might die seized and possessed of, etc. That a portion of the residuary estate so devised consisted of said lot, piece or parcel of land.

*Seventh.* That Samuel Crothers recovered judgment on verdict in the Superior Court for New Castle County against Elizabeth G. Baker, executrix of George R. Baker, deceased, on, etc., for, etc., being No. 26 to the November term, A. D. 1866, of said court; that thereafter a writ of *fieri facias,* was sued out on said judgment, being No. 157 to the November term A. D. 1867 of said court and directed to William Herbert, Sheriff of New Castle County, who made return endorsed thereon, etc. That thereafter a writ of *venditioni exponas* issued being No. 94 to the May term 1868, of said court to said sheriff to sell said lands and tenements. That thereafter, etc., the said sheriff duly made return thereof to said court, endorsed thereon as follows:

"Advertised within described lands and premises for sale on the first day, of February, A. D. 1868 and sold No. 1 therein described to Henry Eckel for," etc.

That the said sheriff, by deed poll under his hand and seal bearing date, etc., recorded· in the Recorder's office aforesaid, in *Deed Record R, Vol.* 8, *page* 440, granted and conveyed the said lot, piece or parcel of land first mentioned unto the said Henry Eckel, his heirs and assigns, in fee. That Elizabeth G. Baker, the widow of the said George R. Baker is now deceased.

*Eighth.* That Enoch N. Stotsenberg and Annie E., his wife, by indenture under their hands and seals bearing date etc., recorded in the Recorder's office aforesaid, in *Deed Record I, Vol.* 7, *page* 219, granted and conveyed the said lot, piece or parcel of land to the said George R. Baker, his heirs and assigns in fee.

*Ninth.* That Rebecca Baker made and published her last will bearing date, etc., with a codicil thereto, bearing date, etc.,

which said will and codicil were, after her death duly proved and allowed by the Register of Wills, in and for Chester County and State of Pennsylvania a duly exemplified copy of which is of record in the office of the Register of Wills, in and for New Castle County, at Wilmington in *Will Record X, Vol.* 1, *page* 190, wherein and whereby, among other things she did order and direct her executors therein named within two years after her decease to sell and dispose at public or private sale the house and lot of land with the appurtenances which she did own in the City of Wilmington in the State of Delaware, adjoining that then occupied by her son George R. Baker being the same premises which Benjamin Webb and Jonas Pusey, assignees of Lea Pusey, conveyed to her in fee, and she did give to her said executors full power and authority in the premises, etc.; that letters testamentary were granted by the said Register of Wills unto Stephen Baker and George R. Baker, the executors named in said will; that the said executors under and by virtue of the power contained in said will by their indenture under their hands and seals, bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record I, Vol.* 7, *page* 213, granted and conveyed the said lot, piece or parcel of land to the said Enoch M. Stotsenberg, his heirs and assigns in fee.

*Tenth.* That Benjamin Webb and Jonas Pusey, by indenture under their hands and seals bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record A, Vol.* 5, *page* 197, etc., granted and conveyed the said lot, piece or parcel of land to the said Rebecca Baker, her heirs and assigns in fee.

*Eleventh.* That Lea Pusey and Mary E. Pusey, his wife, by indenture under their hands and seals bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record Y, Vol.* 4, *page* 249, granted and conveyed all and singular the several lots and lands of the said Lea Pusey lying and being within the limits of the State of Delaware, etc., to the said Benjamin Webb and Jonas Pusey, their heirs and assigns in trust, nevertheless, to the intents and purposes that they and their assigns, or the survivor of them, his heirs, executors, administrators or assigns, should and would, etc., convert all and singular the said premises into

money, etc., and to grant, convey and assure the said real estate of, etc., and the absolute fee simple and inheritance thereof unto the purchaser or purchasers of the same, and to his, her or their heirs and assigns forever, etc.

*Twelfth.* That the president, directors and company of the Bank of Wilmington and Brandywine, by its indenture under its seal bearing date the seventh day of February, A. D. 1828, recorded in the Recorder's office aforesaid, in *Deed Record F, Vol. 4, page 318,* granted and conveyed the said lot, piece or parcel of land in question to the said Lea Pusey, his heirs and assigns, subject to the payment of the yearly rent and the performance of the covenants, provisos, conditions and agreements reserved, mentioned and contained in and by a certain lease, bearing date the———— day of————, Anno Domini————, granted and demised by James Lea to a certain John Martin which said last mentioned deed purported to convey to the said Lea Pusey the title to said lot, piece or parcel of land in fee, subject to said payment of said yearly rent.

*Thirteenth.* That John E. Rigden recovered judgment in the Court of Common Pleas for New Castle County against Thomas McConnell on, etc., said judgment being No. 78 to the December term, A. D. 1817, of said court; that thereafter the said John E. Rigden prosecuted and sued forth out of the said court on said judgment a writ of *fieri facias,* being No. 67 to the May term, A. D. 1819, of said court; that John Moody, sheriff of New Castle County, to whom said writ had been delivered to be executed made return, endorsed thereon, etc.

That thereafter on, etc., being the return day of the writ, the said sheriff made return thereof to said court, endorsed thereon as follows:

"Made sale on the eleventh day of December, 1819 to John Torbert, President of the Bank of Wilmington and Brandywine for," etc.

That the said John Moody, sheriff, by deed poll under his hand and seal bearing date, etc., recorded in the Recorder's office aforesaid, in *Deed Record W, Vol. 3, page* 403, granted and conveyed the said lot, piece or parcel of land particularly bounded and

described in said inquisition unto president, directors and company of the Bank of Wilmington and Brandywine, its successors and assigns, to the proper use, benefit and behoof of the president, directors and company, their successors and assigns for and during all the rest, residue and remainder yet to come and unexpired of the term of nine hundred and ninety-nine years in and by a certain lease, bearing date the————day of————, Anno Domini————, granted and demised by James Lea to a certain John Martin, subject, nevertheless, to the payment of the yearly rent and the performance of the covenants, provisos, conditions and agreements in and by said lease reserved, mentioned and contained.

*Fourteenth.* That Thomas McConnell, by indenture under his hand and seal, bearing, etc., recorded in the Recorder's office aforesaid, granted and conveyed, *inter alia*, the lot of ground situate, etc., to Jacob Alrichs and Robert Porter, their heirs and assigns, upon trust that they, the said Jacob Alrichs and Robert Porter, and the survivor of them, or his assigns, should and would do as conveniently as might be, by one or more sale or sales absolutely sell or dispose of all and singular the thereby assigned real property, the proceeds, etc., which said last mentioned deed purported to convey to the said Jacob Alrichs and Robert Porter the title to said lot, piece or parcel of land in fee upon said trust; that the said Jacob Alrichs and Robert Porter were afterwards divested of the title so conveyed to them by reason of the said sale made by the said John Moody, sheriff.

*Fifteenth.* That at an Orphans' Court of the State of Delaware, in and for New Castle County, upon the petition of John Hayes and George Martin, executors of John Martin, late of the borough of Wilmington, for an order to sell certain real estate of the said John Martin, deceased, to pay the debts of the said decedent of record in the said Orphans' Court in *Orphans' Court Record I*, *Vol.* 1, *page* 240, it is recited in said record that the said John Martin, in his lifetime, became lawfully seized in fee of and in three full equal and undivided fifth parts of, etc., and praying the court to grant them an order for the sale of the real estate before mentioned to enable them to satisfy and discharge the

debts, etc., and it was ordered by the court that the executors aforesaid, make sale of the premises mentioned, etc., that thereafter the said executors made return to the said court as follows, to wit:  *   *   *   "We the executors therein named did on, etc., after due, etc., sell all of the said undivided three-fifths parts of the premises mentioned to Rebekah Martin of, etc., to hold to her, her heirs and assigns forever under and subject to an annual ground rent of, etc., and subject also to the right of dower of," etc., which said return, on, etc., was approved and confirmed by said court.

*Sixteenth.*    That Thomas McConnell and Hannah McConnell, his wife, by indenture under their hands and seals bearing date, etc., recorded in the Recorder's office, aforesaid, in *Deed Record W, Vol.* 2, *page* 523, granted and conveyed one-fifth interest in two lots, one of which John Martin, late of, etc., by virtue of a lease duly executed under the hand and seal of James Lea, dated the, etc., became seized and possessed, situate, etc., and the other by virtue of an indenture of bargain and sale duly executed under the hands of Jacob Broom and John Ferris, Burgesses, and the seal of the borough aforesaid, dated, etc., which the said John Martin became lawfully seized in his demesne as of fee, situate in the said borough, between, etc., which said deed of the said Thomas McConnell and Hannah McConnell, his wife, purported to convey to the said John Martin the one-fifth interest in the title to said lot, piece or parcel of land in fee.

*Seventeenth.*    That John Martin died intestate on or about the——— day of ———, A. D. 1795, leaving to survive him, as his only heirs at law, five children, to wit:   The said Hannah McConnell, wife of the said Thomas McConnell, James Martin, the said John Martin, Eliza Martin, and Joseph Martin.

*Eighteenth.*    That Margaret McLean, Eliza Lea and Henry Lea, by their attorney in fact James Canby, bargained, sold and released unto Lea Pusey, his heirs and assigns, a certain annual ground rent devised unto them by Margaret Marshall, said power of attorney and release being duly acknowledged and delivered, being recorded in the said Recorder's office, in *Deed Record G, Vol.* 4, *page* 40, to wit:

Know all men by these presents, that whereas, Margaret Marshall, late of the Borough of Wilmington, State of Delaware, did by her last will and testament give and bequeath unto us Margaret McLean, Eliza Lea and Henry Lea a certain annual ground rent in said borough.

Now know ye, that we, the said Margaret McLean, Eliza Lea and Henry Lea of the City of Cincinnati, each and every of us have made, authorized and appointed, and by these presents do make, authorize and appoint Isaac Lea, of the City of Philadelphia, our true and lawful attorney for us and in our name to bargain, sell and release in full and forever for each and every of us, all claim and title, that we have to said annual ground rent, and also for each and every of us to seal, execute and deliver such conveyances, bargains, sales and release, for the absolute sale and disposal thereof for such sum or payments as our said attorney shall think fit and expedient, and we do hereby authorize the said Isaac Lea to appoint attorneys, one or more under him for the purpose aforesaid hereby ratifying and confirming, and by these presents allowing whatsoever our said attorney shall in our name lawfully do or cause to be done, in and about the premises by virtue of these presents.

Witness our hands and seals this———day of February, eighteen hundred and twenty-eight.          [Signed and sealed.]

Isaac Lea under his hand and seal duly acknowledged made the following appointment:

By virtue of the power herewith invested in me I hereby appoint James Canby, Esqr., my lawful attorney to act for me fully and completely as though I was personally present.

In witness whereof I have set my hand and seal this twelfth day of March, Anno Domini, eighteen hundred and twenty-eight.          (Signed and sealed.)

James Canby made and executed under his hand and seal, and duly acknowledged the following release:

Know all men by these presents, that I, James Canby, of the Borough of Wilmington, in the County of New Castle, and State of Delaware, by virtue of the power and authority to me given in and by the foregoing letter of attorney, and for and in consideration of the sum of two hundred and sixty-six dollars and sixty-seven cents to me in hand paid by Lea Pusey of the borough aforesaid, the receipt whereof is hereby acknowledged, have bargained, sold and released, and by these presents do bargain, sell, and release unto the said Lea Pusey, his heirs and assigns all that the annual ground rent mentioned or intended so to be in the said letter of attorney (being a rent charge of sixteen dollars per annum issuing out of a certain lot of ground situate on Market Street in the borough aforesaid as in and by a certain lease intended and duly executed under the hand and seal of James Lea, deceased, bearing date the fifteenth day of March, A. D. 1787, and the assignments enclosed thereon now present appears).

To have and to hold all the said rent charge unto the said Lea Pusey, his heirs and assigns for and during the remainder and all the unexpired part of the term mentioned in the said lease.

In witness whereof I, the said James Canby, attorney as aforesaid, have hereunto set my hand and seal this fifth day of April, Anno Domini, one thousand eight hundred twenty-eight.          (Signed and sealed.)

Recorded April 16, 1828.

Statement.

*Nineteenth.* That Margaret Marshall made and published her last will and testament in writing bearing date, etc., which after her death, was duly proved and allowed by the Register of Wills, in and for New Castle County, and is of record in the office of said Register of Wills, at Wilmington, in *Will Record S, Vol.* 1, *page* 189, wherein and whereby among other things, she did give and devise to her nieces, Margaret Lea, Elizabeth Lea, daughter of her brother James Lea, and to Henry Lea, her said brother's son, and to their heirs and assigns forever, all that ground rent of sixteen dollars per annum, payable forever out of that lot of land late in the tenure of Thomas McConnell, and adjoining her present dwelling, to have and to hold the same in equal shares forever.

*Twentieth.* That except as hereinabove set forth there has been no conveyance made of the said lot, piece or parcel of land first hereinabove particularly described from the fifteenth day of March, A. D. 1787, to date by deed, will or otherwise, as shown by the records in the various county offices for New Castle County, Delaware.

*Twenty-first.* That in addition to what is hereinabove set out the title to said lot, piece or parcel of land first hereinabove particularly described, has been referred to as a fee in the following instances:

That on, etc., the said Rebekah Martin by her indenture of mortgage of record in the said Recorder's office, in *Deed Record A, Vol.* 3, *page* 547, etc., granted and conveyed the undivided three-fifths part of a certain lot, piece or parcel of land in which was included the lot, piece or parcel of land first hereinabove particularly described unto Thomas Woodward, and to his heirs and assigns forever, which said mortgage has been duly satisfied of record.

That on, etc., the said George R. Baker, M. D., and Elizabeth G., his wife, by their indenture of mortgage of record in the said Recorder's office in *Mortgage Record Z, Vol.* 1, *page* 421, etc., granted and conveyed the lot, piece or parcel of land first hereinabove described unto Wilmington Savings Fund Society, and to its successors and assigns forever, which said mortgage has been duly satisfied of record.

That on, etc., the said George R. Baker, M. D., and Elizabeth G., his wife, by their indenture of mortgage of record in the said Recorder's office in *Mortgage Record Z, Vol.* 1, *page* 431, etc., granted and conveyed the lot, piece or parcel of land first hereinabove described unto Ann Baker, and to her heirs and assigns forever, which said mortgage has been duly satisfied of record.

That on, etc., the said George R. Baker, M. D., and Elizabeth G., his wife, by their indenture of mortgage of record in the said Recorder's office in *Mortgage Record A, Vol.* 2, *page* 164, etc., granted and conveyed the lot, piece or parcel of land first hereinabove described unto Ann Baker, and to her heirs and assigns forever, which said mortgage has been duly satisfied of record.

That at an Orphans' Court of the State of Delaware, in and for New Castle County, upon the petition of Rebekah Martin, one of the administrators of John Martin for an order to sell certain real estate, including the lot, piece or parcel of land first hereinabove particularly described of record in the said *Orphans' Court Record I, Vol.* 1, *page* 16, etc., it is recited in said petition that said John Martin was, in his lifetime, lawfully seized, *inter alia*, in fee, of and in said lot, piece or parcel of land, but the order for the sale of the real estate of the said decedent did not include the said lot, piece or parcel of land first hereinabove particularly described.

That at an Orphans' Court of the State of Delaware, in and for New Castle County, upon the petition of John Martin one of the heirs of John Martin, deceased, for partition of the said decedent's real estate, which said real estate did include the lot, piece or parcel of land first hereinabove particularly described of record in the said Orphans' Court in *Orphans' Court Record I, Vol.* 1, *page* 189, etc., it is recited in said petition that the said John Martin, deceased, in his lifetime became lawfully seized in fee of and in said lot, piece or parcel of land. Upon the said petition five freeholders were appointed to go upon the premises and divide the same to and among the heirs and representatives, but it does not appear of record in said Orphans' Court that any return was made by said freeholders, or that any subsequent proceeding was taken upon the said petition for partition.

*Twenty-second.* That the said Laura I. Eckel Brown, and Thomas A. Brown, her husband, by indenture of mortgage bearing date, etc., and recorded in the Recorder's office aforesaid, in *Mortgage Record S, Vol.* 8, *page* 405, etc., granted and conveyed, *inter alia,* the said lot, piece or parcel of land first hereinabove more particularly bounded and described to Thomas Darlington his heirs and assigns, to secure the payment of the sum of etc., which said indenture of mortgage has been assigned to, and is now held by Security Trust & Safe Deposit Company, and the balance due upon said mortgage is the sum of five thousand dollars.

*Twenty-third.* That except as hereinabove set forth there are no liens and encumbrances of any nature or character whatsoever of record prior to the twenty-fourth day of May, A. D. 1912, binding said lot, piece or parcel of land first hereinabove particularly described.

*Twenty-fourth.* That on, etc., the said defendant agreed to purchase from the said plaintiff the said lot, piece or parcel of land first hereinabove particularly described for, etc., taking a receipt for, etc., on account of said purchase price, in which it was stated:

"It is understood and agreed that I am to convey to the said John Bail Peirce a good fee simple and marketable title, clear of all liens and encumbrances of every nature and character whatsoever of record prior to the twenty-fourth day of May, A. D. 1912, excepting a mortgage now held by the 'Security Trust & Safe Deposit Company,' the same being recorded in *Mortgage Record S, Vol.* 8, *page* 405, etc., the balance due upon said mortgage being the sum of five thousand dollars.

"Deed to be executed and delivered and balance of purchase money to be paid on the first day of November, A. D. 1915.

"Laura I. E. Brown.  [Seal.]"

*Twenty-fifth.* That on, etc., the said plaintiff signed and sealed a deed purporting to convey the lot, piece or parcel of land first hereinabove particularly described to the said defendant in fee, duly acknowledged in the manner required by the laws of the State of Delaware, and that on the said first day of November, A. D. 1915, tendered the same deed to said defendant and demanded of the said defendant that he pay unto her, the balance of said purchase money, to wit, etc.

*Twenty-sixth.* That upon the tender of the above mentioned deed the said defendant refused and declined to accept and receive the same, and further refused and declined to pay to the said plaintiff the said balance of the said purchase money, * * * because the said deed, if accepted, would not convey to him, the defendant, a good fee simple and marketable title to said lot, piece or parcel of land first hereinabove particularly described, clear of all liens and encumbrances of every nature and character whatsoever of record prior to the twenty-fourth day of May, A. D. 1912, excepting the mortgage held by "Security Trust & Safe Deposit Company," the balance due thereon being the sum of five thousand dollars.

*Twenty-seventh.* It is agreed that all the records referred to, or certified copies thereof, shall be taken as a part of this case stated, etc.

*Twenty-eighth.* If from the above statement of facts the court shall be of the opinion that the deed which was tendered by the said plaintiff to the said defendant would, if accepted and received by the said defendant, have conveyed to him a good fee simple and marketable title, clear of all liens and encumbrances of every nature and character whatsoever, of record prior to the twenty-fourth day of May, A. D. 1912, excepting the mortgage held by "Security Trust & Safe Deposit Company," the balance due thereon being the sum of five thousand dollars, then judgment to be entered for the plaintiff for the sum of nine thousand and nine hundred dollars, besides costs, otherwise judgment shall be entered for the defendant for costs.

The various returns of the several sheriffs, set out at length in the case stated filed, show that the property was taken in execution, inquisition held, and advertised and sold as real estate.

After argument, the Superior Court made the following order:

*Per Curiam:* And now to wit, this tenth day of December, A. D. one thousand nine hundred and fifteen, the above case having been presented and argued by counsel, the court being of the opinion that the said deed, which was tendered by the said plaintiff to the said defendant would, if accepted and received by

Statement—Arguments.

the said defendant, have conveyed to him a good fee simple and marketable title, clear of all liens and encumbrances of every nature and character whatsoever of record prior to the twenty-fourth day of May, A. D. one thousand nine hundred and twelve, excepting the mortgage held by "Security Trust & Safe Deposit Company," the balance due thereon being the sum of five thousand dollars.

It is therefore ordered, adjudged and decreed, that judgment be entered in favor of the said plaintiff and against the said defendant for the sum of nine thousand and nine hundred dollars, besides costs.

Judgment was accordingly entered on the same day.

Counsel for the defendant took a bill of exceptions, and subsequently a writ of error.

Argued before Curtis, Ch., Pennewill, C. J., and Conrad and Heisel, J.J.

The only error assigned was: The court erred in entering judgment in favor of the plaintiff below against the defendant below.

### Argument for Plaintiff in Error.

It appears from *paragraph* 13 of the case stated that John Moody, sheriff, granted a certain piece of land, including the lands in question, unto "President, Directors and Company of the Bank of Wilmington and Brandywine," its successors and assigns, for and during all the rest, residue and remainder yet to come and unexpired of the term of nine hundred and ninety-nine years in and by a certain lease granted and demised by James Lea to a certain John Martin, subject nevertheless, to the payment of the yearly rent and the performance of the covenants, provisos, conditions and agreements in and by said lease reserved, mentioned and contained.

It nowhere appears therein that James Lea, or his heirs, devisees or assigns, ever conveyed the fee simple estate in said lands to said bank, or to any of its successors in title.

The release of Margaret McLean and others to Lea Pusey,

appearing in *paragraph* 18, is for and during the remainder and all the unexpired part of the term mentioned in the said lease, so that the effect of said release would be to extinguish the rent charge for the balance remaining of the term of nine hundred and ninety-nine years.

It is respectfully submitted that the title which would have been conveyed by the deed of the defendant in error to the plaintiff in error, if the same had been accepted, would not have been a good fee simple marketable title clear of all liens and encumbrances except as provided in the agreement of sale, and that the deed would not have conveyed any interest in said lands other than the residue of the term of nine hundred and ninety-nine years which was created by the lease of James Lea to John Martin.

Subject to certain exceptions and qualifications, no rule is better settled by the decisions, than the general one that a tenant in undisputed possession of the demised premises, is estopped to deny the title of his landlord as such title of the landlord existed in him at the time of the creation or the inception of the tenancy before a surrender of possession to the landlord. 24 *Cyc.* 934, and the cases cited.

Not only tenants, but their privies in blood or estate, are estopped from disputing the title of the landlord. The estoppel extends to subtenants, assignees of the lessee, a mere licensee holding under the lessee or any one who succeeds to the possession to or from the tenant. This includes heirs of a tenant who are in possession after his death, purchasers of the leased premises from the lessee, the wife of a tenant in possession with him, and the husband of a tenant who is in possession in her right. 24 *Cyc.* 943, and cases cited.

A tenant cannot deny his landlord's title until he is discharged from the estoppel arising out of his lease and possession by a yielding up of possession to his lessor. A surrender is necessary even after the expiration of the term of the lease. This rule applies not only to the tenant, but also to all who succeed to the possession from or through him. 24 *Cyc.* 946, and cases cited.

Without the landlord's consent a tenant in possession cannot set up against his landlord a title acquired by him before or during

his tenancy hostile in its character to the title which he acknowledged in accepting the demise. This rule does not prevent, however, the assertion of the adverse title at the end of the term after possession is surrendered to the landlord. 24 *Cyc.* 952, and cases cited.

### ARGUMENT FOR DEFENDANT IN ERROR.

*First.* The first paper of record in the chain of title (*paragraph* 16) is the deed of Thomas McConnell and wife to John Martin, bearing date October 28, A. D. 1801, which conveys *inter alia* one-fifth interest in a lot which John Martin, deceased, by virtue of a lease duly executed under the hand and seal of James Lea, dated the fifteenth day of March, A. D. 1787, became seized and possessed. There is nothing in this deed to disclose the term demised by said lease. The said deed purports to convey a fee to said one-fifth interest.

*Second.* The next link (*paragraph* 15) is the Orphans' Court proceedings in the year 1803, for the sale of certain real estate of John Martin, deceased, to pay the debts of the said decedent. In the record of said proceedings it is recited that John Martin, in his lifetime, became lawfully seized in fee of and in three full equal and undivided fifth parts of the lot therein described. On March 6, A. D. 1804, the executors of John Martin, deceased, made return that they did sell the said undivided three-fifths parts of the premises described in the petition to Rebekah Martin, to hold to her, her heirs and assigns forever, under and subject to an annual ground rent of three pounds and twelve shillings, and subject also to the right of dower of the widow of John Martin, the elder. In this proceeding no mention is made of any lease for any term. The fact that the Orphans' Court entertained jurisdiction and ordered a sale and particularly subject to the right of dower of the widow of John Martin, the elder, conclusively indicates that the Orphans' Court held the said interest to be fee.

*Third.* The next paper of record (*paragraph* 13) is the deed poll made by John Moody, sheriff, to the Bank of Wilmington and Brandywine, which conveys the lot of land therein described.

to the said bank, its successors and assigns, for and during all the rest, residue and remainder yet to come and unexpired of the term of nine hundred and ninety-nine years in and by a certain lease bearing date the——day of——, A. D.——, granted and demised by James Lea to a certain John Martin, subject, nevertheless, to the payment of the yearly rent and the performance of the covenants, provisos, conditions and agreements in and by said lease reserved, mentioned and contained. Nowhere else in the chain of title is the lease of James Lea to John Martin described to be for any definite term of years. This deed poll was made pursuant to a sale held under a *vend. exp.* which was issued upon a judgment after a levy had been made upon the lands conveyed and inquisition held. In the proceedings taken on the judgment the land was treated as real property, and no mention was made of any lease except in the sheriff's deed.

*Fourth.* The next deed of record is the deed of the Bank of Wilmington and Brandywine to Lea Pusey, which conveys said lot of land to said Lea Pusey, his heirs and assigns, subject to the payment of the yearly rent and the performance of the covenants, provisos, conditions and agreements reserved, mentioned and contained in and by a certain lease bearing date the——day of ——, A. D.——, granted and demised by James Lea to a certain John Martin. No mention is made in this deed that the lease is for any term of years. During the time that the said Lea Pusey was seized a release of the ground rent was made to him, his heirs and assigns, by the attorney in fact, for Margaret McLean, Eliza Lea and Henry Lea for and during the remainder and all the unexpired part of the term mentioned in the said lease.

In the will of Margaret Marshall, devising said ground rent to Margaret Lea, afterwards McLean, Elizabeth Lea and James Lea, the ground rent is described as all that ground rent of sixteen dollars per annum, payable forever, out of that lot of land late in the tenure of Thomas McConnell. (*Pars.* 12 and 18.)

*Fifth.* In the next deed of record which was made by Lea Pusey and wife to Benjamin Webb and Jonas Pusey, on September 29th, A. D. 1837, none of the real estate conveyed is described by metes and bounds, but the said deed conveys generally all the

Arguments.

lots of land, lands, tenements and hereditaments of said Lea Pusey lying and being within the limits of the State of Delaware. (*Par.* 11.)

*Sixth.* In all the subsequent conveyances of said lot down to the date of the filing of the case stated, whether by deed, or devise, the title to said lot has always been treated as a fee.

The plaintiff in error relies upon but one proposition of law, namely, that the tenant cannot dispute the title of his landlord.

It is respectfully submitted that this proposition of law is not applicable in the case at bar. Only in two instances it is suggested that the title to said lot, piece or parcel of land is a lease for a term of years. The presumption that it is a leasehold is overcome by the numerous instances in which it has been described or treated as a fee. But assuming that the interest was originally a leasehold interest any reversion which remained in James Lea has been lost by the adverse possession of the defendant in error and her predecessors in titler

"The general rule is well settled that a tenant cannot dispute the title of his landlord by setting up title either in himself or in a third person during the existence of the lease or tenancy. While the decisions are far from harmonious as to what acts will initiate an adverse possession by the tenant it is at least well settled that there can be no adverse possession by the tenant until one of the following acts has occurred: Surrender of the premises to the landlord; actual, open and notorious disclaimer of the landlord's title brought to his knowledge, or actual disseizin or ouster of the landlord. The disclaimer and notice thereof must be actual or so open and notorious as to raise the presumption of notice, and the statute will run only from the time of such knowledge and notice." 1 *Cyc.* 1058.

According to a considerable number of decisions, when the tenant disclaims to hold under the lease and the landlord has notice of it the tenant's possession is adverse and the statute will run from the time when the landlord has notice, and this notice it seems need not be actual or express. 1 *Cyc.* 1060.

The acts of the various owners by conveying and treating said title as a fee simple is a sufficient disclaimer of the title of the landlord to initiate the running of the statute, and such disclaimer has been so open and notorious as to charge the landlord with notice.

The syllabus to *Dougherty v. Flemming,* 7 *Pennewill,* 278, 79, *Atl.* 104, is:

"It appearing to the court, from the case stated, that the real estate described having been held and transferred in fee simple for over fifty-eight years, and that no claim for ground rent, nor any payment thereof, had been made for over sixty years, held that the deed executed by the plaintiffs and tendered to the defendant, would, if it had been accepted have conveyed to the defendant in fee simple the said real estate discharged of ground rent; and that judgment should, therefore, be entered in favor of the plaintiffs."

The facts in *Townsend v. Boyd*, 217 *Pa.* 386, 66 *Atl.* 1099, 12 *L. R. A.* (*N. S.*) 1148, are almost identical with the facts in the case at bar. In that case the court held that after a great lapse of time and a series of circumstances disclosing an unchallenged fee simple title during such period of property originally held under a lease the courts will presume whatever grant is necessary to establish the landlord's title in an ejectment proceeding against one claiming under such title.

*Per Curiam:* The court are of the opinion that the judgment below should be affirmed, it appearing from the agreed statement of facts that the conveyance made by James Lea to John Martin in 1787 was a conveyance in fee simple reserving rents; and that the persons entitled to the rents reserved, assigned the same absolutely to Lea Pusey, to whom the land had been conveyed in fee simple subject to the payment of said rents; through whom, and his successors in title, the plaintiff claims a fee simple title.

Judgment below affirmed.