MONBAR, INC., a corporation created by and existing under the laws of the State of Delaware,

*vs.*

FRANCIS T. MONAGHAN.

*New Castle, June* 20, 1932.

*David J. Reinhardt,* for complainant.

*David J. Reinhardt, Jr.,* for defendant.

THE CHANCELLOR: If the title to land be in doubt, whether because of a question of law or of fact, a court of equity will not compel a vendee to take it. *Brown, et ux., v. Davis,* 15 *Del. Ch.* 37, 131 *A.* 142; *Rehoboth Heights Development Co. v. Marshall,* 15 *Del. Ch.* 315, 137 *A.* 83.

Where the title to be conveyed is a "good and marketable" one, it need not necessarily be a perfect one of record. It may rest upon a presumption, provided the presumption be such that if the question were before a jury, it would be the duty of the judge to give a clear direction in favor of the fact and not to leave it with the jury for consideration under the evidence. Cases *supra.*

The complainant's title is questioned on two grounds. These are first, that it is not a good and marketable one in fee simple; and second, if it is, it is encumbered by the lien of a ground rent.

The following are the facts of record:

Joseph Shipley, being seised in fee of the premises in question, on November 11, 1800, demised the same to one Samuel File, his executors, administrators and assigns, for the term of two thousand years, upon an annual rental of ten dollars and seven cents without deduction for taxes, etc., payable on the twenty-fifth day of March in every year during the existence of the term.

File entered into possession and continued so until the time of his death intestate in 1834. Thereafter, on June 20, 1835, his heirs at law, his administrator not joining, by deed conveyed the premises to Dr. James W. Thompson, his heirs and assigns, upon the consideration of seven hundred and fifty dollars. This deed conveyed also adjoining land held by File in fee. It recited File's title to the land as being derived from a lease from Shipley "on ground rent for the term of two thousand years, from and after the twenty-fifth day of March, A. D. 1801, under and subject to the yearly rent or sum of ten dollars and seven cents." The deed conveyed to Thompson "subject to the ground rent."

Thompson on November 11, 1850, conveyed the land by way of mortgage to Susan Vansciver, her heirs and assigns, to secure the payment of a bond for one thousand dollars. The mortgage makes no mention of the annual rent payable to Shipley, nor of any so-called ground rent chargeable against the land.

Susan Vansciver foreclosed the mortgage, secured a sale on a writ of *pluries levari facias* on July 3, 1867, and the sheriff made his deed to the purchaser, one Cornelia Vansciver. The sheriff's deed poll conveyed the land to Cornelia Vansciver, her heirs and assigns. Like the mortgage,

it makes no mention of an annual rent chargeable against the land in any way.

Cornelia Vansciver, on May 31, 1876, conveyed the premises to Charles L. Gabke, his heirs and assigns, "for and in consideration of Seventeen hundred dollars less one hundred and sixty-eight dollars of a ground rent the interest of which is to be paid annually to the heirs of Joseph Shipley." This is the only language found in the deed relating to the rent.

On December 26, 1881, Gabke conveyed the premises in fee to his daughter, Mary E., "for and in consideration of Two Thousand Dollars ($2,000.00) * * * less one hundred and sixty-eight Dollars of a ground rent, the interest of which is to be paid annually to the heirs of Joseph Shipley." No other language appears in this deed referring to rent.

On September 23, 1890, Mary E. Gabke reconveyed the premises in fee to her father, Charles L., and to her mother, Annie E., as tenants by the entirety. The consideration was the same as in the preceding deed and the way of describing it was the same, including the reference to rent.

Charles L. Gabke died. Then his wife died intestate. Thereafter on January 7, 1931, all her heirs at law joined in conveying the premises to the complainant in fee simple in consideration of fifty-five hundred dollars. This deed makes no mention of rent reserved in favor of Shipley, or those deriving under him.

The foregoing is all that the records show as constituting the chain of the complainant's title. It is apparent that so far as the records show the fee simple title has never passed out of Joseph Shipley, or those succeeding in his right. All that Joseph Shipley disposed of was a term for years, with the reversion in him and his heirs and assigns.

That which his lessee, File, acquired was a lease for years. There being no statute in this State to the contrary, the law permitted the lease notwithstanding its length of

two thousand years. 1 *Tiffany, Real Property* (*2d Ed.*) §
39; 16 *R. C. L. p.* 608, *par.* 88; 35 *C. J.* 973. A lease is per-
sonal property and as such on the death of the lessee de-
volves, not upon the lessee's heirs, but upon his personal
representative. 16 *R. C. L.* 536, *par.* 8; 35 *C. J.* 970.
When, therefore, the heirs of File undertook in 1835 to con-
vey a fee simple title to Dr. Thompson, they undertook to
convey something which their ancestor never possessed.
Title to the lease could have been passed only by File's ad-
ministrator. At this point, therefore, a break in the chain
of title to the lease appears, and that break has never been
repaired as a matter of record. It is further to be noted that
the heirs of File in referring to the lease as being held from
Shipley "on ground rent" used language that was technical-
ly inaccurate. There are so far as I am advised only two
forms of ground rent known to American law—the one is
found in Pennsylvania and the other in Maryland. The
latter takes the form of a perpetual lease, usually for ninety-
nine years perpetually renewable with reservation of an
annual rent. So far as I know the Maryland form has
never been used in this State. The form of ground rent,
however, used in Pennsylvania, of which Delaware was
once a part, has, especially in earlier times, been frequently
the subject of creation in this State and has been recog-
nized by at least two cases found in the law reports.
*Brown v. Pierce,* 6 *Boyce,* 326, 99 *A.* 530; *Braunstein v.
Black,* 5 *Pennewill,* 300, 62 *A.* 1091. The Pennsylvania
form of ground rent consists of a grant in fee simple with
the reservation of an annual rent in favor of the grantor
and his heirs.

In *Dougherty v. Flemming,* 7 *Pennewill,* 278, 79 *A.* 104,
reference is repeatedly made in the case stated to a "ground
rent," notwithstanding it was, as in this case, a rent pay-
able yearly on a two thousand year lease. Such a rent, as
before observed is not a technical ground rent; it is simply
a rent charge founded upon a conveyance under which the
relation of landlord and tenant is created. 28 *C. J.* 839. I

suppose the Superior Court in *Dougherty v. Flemming, supra,* when it used the expression "ground rent" in its order (no opinion is reported) did so to make its order conform to the recitals in the deeds and to the case stated, without meaning to indicate that the technical expression was properly applicable to the rent in question.

Shipley's deed to File in 1800 created a lease for years. It did not create a ground rent in the true sense of the word. And, so far as the record discloses, the situation of the title in this regard remained unaltered until 1835, when File's heirs assumed to execute a deed in fee to Thompson. In this deed we see the first mention of a "ground rent," but it is indicated that the ground rent is for two thousand years. Herein the deed expresses legal inconsistencies, for while a ground rent may be appropriately descriptive of a burden on a fee simple title and the deed on the face of its granting clause is therefore consistent with legal conceptions, yet it falls into an inconsistency with legal conceptions by referring to the ground rent not as a perpetual one but one for a term of years.

Starting with the deed of the File heirs in 1835 and coming on down through the six conveyances since then, the last of which was in 1931, every grantor undertook to transmit to his grantee a fee simple title. For a period therefore of ninety-six years the existence in Joseph Shipley and his heirs of a reversion after a two thousand year term, has been expressly repudiated by those who were in possession of the property and who openly and notoriously spread upon the records a claim of holding and having held a fee simple title, which was of course absolutely inconsistent with and adverse to the Shipley reversion.

Now if the so-called rent which was paid by the various owners to the Shipley estate as late admittedly as 1893 had been paid in virtue of a holding by them as tenants under Shipley's two thousand year lease, the paying tenants would be estopped to assert a holding adverse to their landlord. But they were not paying as tenants of a term.

They paid as will presently appear, and as I think was known to and to all practical purposes admitted by the Shipley heirs, as owners of the fee subject to a ground rent. I do not see how their claimed status of fee owners could have been unknown to the Shipley heirs. That they were holding adversely to the claims of the Shipleys to be the owners of the fee is apparent. That being so, is it possible now after the lapse of such a length of time for the heirs of Shipley to successfully assail the fee simple title of the present owner? Such title, while not a good one of record, is a good one by adverse possession. The case of *Dougherty v. Flemming*, 7 *Pennewill*, 278, 79 *A.* 104, cited *supra*, appears by the order entered in the light of the facts shown in the case stated, to support this conclusion. The rule which estops a tenant from denying the title of his landlord, precludes him from contesting the title only as it existed when the lease was made and possession given. 35 *C. J.* 1251. "A tenant may, therefore, repudiate his tenancy, and set up against his landlord an adverse claim in his own right provided the repudiation is known to the landlord  *   *   * . In general in order to initiate an adverse possession by the tenant there must be  *   *   *
an actual open and notorious disclaimer of the landlord's title brought to his knowledge." This quotation is from 35 *C. J.* 1251, and many authorities are cited in the notes in support of it.

I conclude on this branch of the case that the Shipley reversion is defeated by the adverse holding of the complainant in fee.

The first objection to the title as not being a good marketable one in fee simple appears then not to be well founded.

The next question to be considered is whether the fee title of the complainant is burdened with the incumbrance of the ground rent.

The year 1876 marks the appearance of a new feature in connection with this rent matter. In that year the deed

of Vansciver to Gabke in fee simple was executed. The consideration was seventeen hundred dollars "less one hundred and sixty-eight dollars of ground rent the interest of which is to be paid annually to the heirs of Joseph Shipley." Now here is something new that was injected into the title. Shipley had never reserved any ground rent; and even regarding the rental of ten dollars and seven cents named in his lease as a ground rent (which for the reasons already stated cannot be so regarded)—yet even so, it was not in the form of an interest on one hundred and sixty-eight dollars. Why the parties adopted this particular language I can only speculate upon. Annual interest at six per cent. on one hundred and sixty-eight dollars amounts, to be sure, to ten dollars and seven cents, the amount Shipley was to receive under his lease. It may be that the parties to the Vansciver deed as well as in the subsequent deeds conceived that the proper thing to do was to capitalize the annual charge of ten dollars and seven cents at six per cent. which would result in one hundred and sixty-eight dollars, and that the latter should then be deducted from the agreed consideration. If so, it was a roundabout method of expressing the consideration. It would have been better, in the Vansciver deed for instance, to have named the consideration as fifteen hundred and thirty-two dollars and subjected the land to an annual ground rent of ten dollars and seven cents due the Shipley heirs.

Be that as it may, the result is that since 1835 the holders of the land claimed a fee simple title and in 1876 began in their muniments of title to admit their claimed fee to be burdened with a ground rent of what amounts to ten dollars and seven cents per year. It is significant that the account of the agent of the Shipley heirs, Mr. Edward Bringhurst, Sr., was carried as "interest," in harmony with the peculiar language of the deeds just referred to, and that the accounts in settlement by Bringhurst of the estates of the Shipley heirs are in similar harmony.

The evidence convinces me that, regardless of the as-

pect which the law places upon the rent originally charged by the Shipley lease as due from a tenant to a landlord, the holders of the land and the Shipley estate concurred in the view as early as 1876 that the title was from then on held in fee simple with a true ground rent of ten dollars and seven cents per year charged thereon in favor of the Shipley heirs.

Such rent was paid yearly until 1893 when the accounts of the agent of the Shipley heirs appear to have been closed with respect to the matter, and no ground rent has since been paid by any of the title holders.

In that year, it is claimed and shown by uncontroverted and rather conclusive evidence that Gabke, the then owner, paid to Bringhurst, the agent, about nine hundred dollars in full settlement and obliteration of the ground rent. Whether however Bringhurst had authority from his principals to liquidate the ground rent is not shown by the evidence. Nor is it shown that the sum thus paid was received by the Shipley heirs. Accordingly, I am not content to rest the decision of this cause upon the theory of a cancellation of the rent by a purchase on the part of the ground tenant, made as claimed through Bringhurst, agent.

Since 1893, the fact is, not only has no ground rent been paid, but none has ever been demanded. Over thirty-eight years have elapsed since then and the time when the pending bill was filed. The question arises then—is the rent presumed, not only from failure to pay but also from failure to demand for that length of time, to have been extinguished? I think so. In *Dougherty v. Flemming, supra,* the Superior Court held that failure to demand a ground rent for sixty years raised a presumption of extinguishment. In *Braunstein v. Black,* 5 *Pennewill,* 300, 62 *A.* 1091, however, failure to pay for sixteen years was held not sufficient to support the presumption. In the instant case the period is thirty-eight years, and I am of opinion that a failure for that length of time to assert the claim is enough,

under all the circumstances of the case, to raise the presumption of extinguishment.

Decree for the complainant.

NOTE.—On appeal the Supreme Court affirmed the decree entered in accordance with the foregoing, without opinion.