**DIRECTOR OF REVENUE, Respondent, Appellant,**

v.

**Robert C. and Vivian A. BARRY, his wife, and Michael Creus, Petitioners, Appellees.**

Superior Court of Delaware, New Castle County.

Submitted July 27, 1978.

Decided Aug. 7, 1978.

John P. Fedele, Asst. Atty. Gen., Wilmington, for respondent, appellant.

John E. Messick of Tunnell & Raysor, Georgetown, for petitioners, appellees.

TAYLOR, Judge.

The issue here is whether the Delaware Realty Transfer Tax is required to be paid with respect to an assignment of a lease covering single family residential property in Rehoboth Beach in which the lease covers a period of forty-six years. The transaction occurred on October 7, 1976 and the consideration paid was $55,000. The determination of the Director of Revenue assessing the Real Estate Transfer Tax was appealed to the Board which decided that the transaction was not subject to the Realty Transfer Tax. This is an appeal from the Board's decision. The function of this appeal is to determine whether the decision of the Board is supported by the record and is in conformity with the law. *State Tax Commissioner v. Wilmington Trust Co.*, Del.Super., 266 A.2d 419 (1968).

Because of the complexity of the transactions, it is necessary to describe them in some detail. Prior to October 1, 1976, the property was held by Gerson Nordlinger, Jr. under lease from Rehoboth-By-The-Sea Realty Company for a term of 20 years beginning March 1, 1963, followed by options to renew the lease for an additional forty years. It appears that during the term of that lease a single family residential house had been built on the leased land. Under the lease, on or before the termination of the lease, the lessee had the right to remove buildings which lessee had placed on the land during the lease provided the terms of the lease had not been breached, and if the buildings were not removed the buildings would become the property of the lessor.

The 1963 lease was terminated by agreement dated October 1, 1976 and on the same date a new lease was entered into between the same parties involving the same property covering a forty-six year pe-

riod. The terms with respect to buildings appear to be similar to those described above. On October 7, 1976 Gerson Nordlinger, Jr. assigned the October 1, 1976 lease to Miguel Creus[1] for a consideration of $1.00, and this assignment was consented to by the lessor. On the same date Miguel Creus assigned the lease to Robert C. Barry and Vivian A. Barry [Barrys] for the consideration of $55,000, and this assignment was consented to by the lessor. It is the transaction between Miguel Creus and the Barrys which the Director of Revenue contends is subject to the Realty Transfer Tax. The focus of taxability under the Delaware Realty Transfer Tax Act, 30 Del.C. Ch. 54, is the document whereby transfer of interest in real estate is accomplished. 30 Del.C. § 5402(a). In its original form, as adopted by Chapter 109, Vol. 55, Laws of Delaware the tax applied to any document whereby any real estate or interest therein was quitclaimed, granted, bargained, sold or otherwise conveyed; it specifically excluded leases. The coverage of the Act was expanded by Chapter 153, Vol. 59, Delaware Laws to include leases for a term of more than five years and certain other matters not pertinent here. The reference to leases, except those involving condominium units or unit properties or real estate owned by the State or a political subdivision, was deleted by Chapter 507, Vol. 60, Laws of Delaware, effective June 30, 1976. The transactions involved here occurred after that date and are governed by that amendment.

Most of the language of the Delaware Realty Transfer Tax Act appears in almost identical form in 72 *Purdon's Pennsylvania Statutes Annotated* § 3283-92 which antedated the Delaware statute. Specifically the language of 30 Del.C. § 5401(1) as it was originally adopted in 55 Del.Laws Ch.

109 appears to be identical with that of § 3284 of the Pennsylvania statute and the original Delaware § 5402(a) appears to be identical with § 3285 of the Pennsylvania statute. Because of their similarity, it must be concluded that the Delaware draftsman was familiar with the Pennsylvania statute. With respect to the Pennsylvania statute the Pennsylvania Supreme Court declared in *Commonwealth v. Willson Products, Inc.,* 412 Pa. 78, 194 A.2d 162, 165 (1963):

> "It is clear (1) that the Act taxed and intended to tax only transactions effectuated by documents which were to be recorded; and (2) that the documents referred to in the Act clearly meant any deed or similar instrument *which conveyed to the grantee* or purchaser lands, tenements or hereditaments; and (3) that the stamping of the document and the value of the lands conveyed thereby was to be evidenced and determined when the document was lodged with the recorder of deeds for recording."

The Director does not contend that the lease of the bare land is subject to the Realty Transfer Tax. His position is that in addition to the lease of the bare land, there was a transaction whereby the former tenants' interest in the residential property located on the land was transferred to the Barrys for $55,000. However, the Director points to no language in the documents described above and to no legal authorities in support of that proposition. Nor does this record contain evidence of unrecorded documents which transfer an interest in the dwelling house independent of the land.

◾ It is true that the two assignments of the October 1, 1976 lease incorporate reference to improvements[2] while the lease

---

1. Referred to in pleadings as Michael Creus.

2. Each of the assignments contains the following dispositive language:
   "The Assignor hereby assigns, transfers and sets over unto the Assignee all his right, title and interest of, in and to the Lease identified in the preamble hereof from the Lessors named above for:
   ALL OF THE UNEXPIRED LEASEHOLD RIGHT, TITLE AND INTEREST, IN AND TO:

ALL that certain lot, piece or parcel of land situated in Lewes and Rehoboth Hundred, Sussex County, State of Delaware, more particularly described as follows: Lot Number Nineteen (19), Block Number Twenty-Eight (28) Chesapeake Street, . . . together with the improvements thereon and the rights and appurtenances thereunto belonging or in anywise appertaining."

does not. However, the lease does not exclude improvements existing on the leased land at the time of execution of the lease. The reference to improvements is not significant. It is generally held that a lease of land carries with it the buildings and improvements which are located on the land, unless the language of the lease provides otherwise. 51C *C.J.S.* Landlord & Tenant § 289, p. 740. Hence, the assignments merely particularized what the lease by operation of law encompasses. The assignments do not purport to confer different rights with respect to improvements than to the land, since the assignments cover the "leasehold right, title and interest, in and to" the land "together with the improvements thereon". Thus, only a leasehold interest in the improvements (here the dwelling) was assigned.

The Director cites *Wilmington Suburban Water Corp. v. Board of Assessment*, Del. Supr., 316 A.2d 211 (1973) in support of its contention that the dwelling may be given a separate taxable status from the land on which it is located. It is true that that case held that underground pipes and storage tanks owned by a private water company but located in or upon State land and railroad land were subject to real estate tax even though the land was exempt from taxation. The case is distinguishable on two grounds. First, the tax was upon real property and not upon recorded documents. Second, and of greater significance, the documentation in that case had provided a separate identity for the pipes and tanks which isolated them from the land in that the pipes and tanks were separately owned by the water company and the owners of the land had no rights in the pipes and tanks. As an adjunct to separate ownership the water company had the continuing right to remove the pipes and tanks. What the Director overlooks is that here the record documents do not indicate an intention to treat the ownership or use of the dwelling separately from that of the land. The record documentation does not sever the ownership nor does it give a right to re-

move improvements which pre-dated the lease.

It is noted that under the lease the lessee is entitled to remove buildings which the lessee constructed on the premises during the tenancy when the lease expires if the lessee has not breached the lease. The current lease is dated October 1, 1976 and it does not appear that the dwelling house was constructed after that date. Since the dwelling house was not constructed by lessee or the assignees during the term of the current lease, it does not appear that the current lessee and his assignees are entitled to remove it. Based upon the documents presented, I do not find that after the expiration of the lease the Barrys will have any interest in the dwelling.

■ The papers do not indicate that the Barrys acquired any special interest in the land or dwelling house other than that which normally exists under a long term lease. A lease for a term far greater than the term of this lease does not cease to be such by virtue of its length of term. *Monbar, Inc. v. Monaghan*, 18 Del.Ch. 395, 162 A. 50 (1932); 49 *Am.Jur.2d* Landlord & Tenant § 68, p. 109.

■ Assuming without deciding that a building may be contractually but not physically separated from the land and continued to retain its status as realty, I conclude that the Director did not prove such by the evidence presented to the Board.

■ It is clear the instrument involved here is not within the definition of document found in § 5401(4). The Director contends that since this is an assignment of a lease and not a lease, it is not entitled to exemption under § 5401(1).[3] By its terms, this lease assignment does nothing more than substitute the Barrys as lessees under the lease of October 1, 1976. It has no different effect than would have been true if the prior lease between the lessor and lessee of the October 1, 1976 lease had been terminated and a new lease had been en-

---

**3.** 30 Del.C. § 5401(1) covers any writing whereby any interest in an estate "shall be quit-claimed, granted, bargained, sold or otherwise conveyed to the grantee."

tered into between the lessor and the Barrys. It is noted that the Pennsylvania Realty Transfer Tax Act discussed above has been held not to impose a tax on an assignment of a lease. *Oak Hill Development Corporation v. Anderson,* Pa.D. & C., 84 D. & C. (Pa.) 442 (1952). Under Delaware law this lease assignment is entitled to the same exemption which the statute accords to the lease which is assigned.

It is recognized that a long-term lease may appear to have some of the same practical results as a conveyance. However, the General Assembly has elected to treat them differently. It is the function of this proceeding to apply the law as it presently exists.

I conclude that the Board correctly held that the assignment of lease involved here is not subject to the Realty Transfer Tax.

The decision of the Tax Appeal Board is affirmed. IT IS SO ORDERED.