**Barbara A. PORTER, Plaintiff,**

v.

**Morton HOLLANDER and Ruth M. Hollander, Defendants.**

Civ. A. No. 79–184.

United States District Court,
D. Delaware.

July 1, 1980.

---

Nicholas H. Rodriguez, Schmittinger & Rodriguez, Dover, Del., for plaintiff.

S. Bernard Ableman, and Henry E. Gallagher, Jr., Connolly, Bove & Lodge, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action, plaintiff Barbara Porter ("plaintiff" or "Porter") seeks specific performance of a written contract in which defendants Morton and Ruth Hollander ("defendants") agreed to purchase and plaintiff agreed to sell a condominium unit in Bethany Beach, Delaware. The defendants filed a counterclaim for specific performance of the contract, engendering a dispute between the parties as to what performance is required under the contract. Jurisdiction is conferred by 28 U.S.C. § 1332.[1] The defendants have moved for summary judgment which, for the reasons set forth below, will be denied.

### I. Facts and Contentions

While there are specific factual disputes between the parties, the following are the essentially uncontested facts. On November 16, 1978, plaintiff and defendants entered into a written contract in which plaintiff agreed to sell and defendants agreed to purchase the property identified in the contract as "Sea Colony # 309 N Annapolis House and the contents therein, Bethany Beach, Baltimore Hundred, Sussex County Delaware." (Doc. No. 8, Affidavit of Morton Hollander, Ex. I). The purchase price for this property was $33,000. The agreement further provided that "title conveyed to purchasers shall be good and merchantable, free and clear of all liens and encumbrances, except restrictions of record and existing easements. If title is defective at settlement the forfeit money will be refunded." (Id.)

The property that is the subject of this action—Sea Colony # 309 N—is one of 208 separate units in Sea Colony East, Phase I Condominium ("Phase I"). Under the Declaration of Phase I, Sea Colony, Inc., a Delaware corporation, holds the fee simple title to the land upon which the condominium is situated. (Doc. No. 19, Affidavit of N. M. Dreyfuss, ¶¶ 1, 3). In the sales of the condominium units, a proportionate undivided leasehold interest in the land as a common element is transferred to the purchaser along with a proportionate undivided fee simple interest in the common elements other than the land and the fee simple interest in the unit itself. With respect to Unit # 309 N, plaintiff owns .37016% undivided fee simple interest in the common elements other than the land, .37016% undivided leasehold interest in the land, and the unit. (Doc. No. 13, Affidavit of Barbara B. Porter, ¶ 2). Under both the Declaration of Phase I and the lease between Sea Colony, Inc. and the original owner of each unit— this lease is assigned to all subsequent pur-

1. The plaintiff is a resident of Delaware and the defendants are Maryland residents. In actions for specific performance of a contract to convey realty, the value of the property involved— in this case, $33,000—determines the jurisdictional amount. See Ebensberger v. Sinclair Refining Co., 165 F.2d 803 (5th Cir.), cert. denied, 335 U.S. 816, 69 S.Ct. 35, 93 L.Ed. 371 (1948). At present, the dispute between the parties concerns what specific performance is required under the contract, as distinguished from whether specific performance is required. While only $5600 is involved by reason of defendants' counterclaim, see pages 152–153, infra, at the time plaintiff filed her complaint for specific performance, $33,000 was at issue. It is well settled that the amount in controversy is determined as of the time an action is filed and that defenses or events which occur subsequent to filing which reduce the amount recoverable to less than the statutory limit do not oust jurisdiction. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); Wiesenfeld v. Secretary of Health, Education and Welfare, 367 F.Supp. 981, 985 (D.N.J.1973), aff'd, 420 U.S. 636, 642 n.10, 95 S.Ct. 1225, 1230, 43 L.Ed.2d 514 (1975).

chasers (*Id.*, ¶ 3)—the owner of a condominium unit may purchase a proportionate interest in the land as a common element at a purchase price calculated to be approximately $5600. (*Id.*, Ex. A, ¶ 12; Doc. No. 14, Ex. B, ¶ 15). As of January 24, 1980, four unit owners in Sea Colony East had exercised this option to purchase fee simple title to the land. (Doc. No. 19, ¶ 4).

There exists a factual dispute as to whether the defendants were aware of the nature of the interests owned by the plaintiff prior to the signing of the contract of sale on November 16, 1978, or whether they were first so advised thereafter. *Compare* Doc. No. 14, Affidavit of George G. Keen, ¶¶ 4–7 *with* Doc. No. 8, Affidavit of Morton Hollander, ¶ 4. In any event, the defendants, contending that they were entitled under the contract to a fee simple interest in the unit and all the common elements including the land, "declined to accept the title tendered and to proceed with settlement." (Doc. No. 8, ¶ 5). This suit and counterclaim ensued, with plaintiff seeking to require the defendants to purchase the unit along with her leasehold and fee simple interests in the common elements, and the defendants seeking to compel the plaintiff to purchase a fee simple interest in the land and convey that interest to them along with her fee simple interests in the unit and all the other common elements.

In their motion for summary judgment, the defendants raise two main contentions. First, they contend that the title which plaintiff proposes to transfer is less than "good and merchantable" because it fails to comply with the Delaware Unit Property Act, 25 *Del.Code* § 2201 *et seq.* Second, they assert that the title which plaintiff proposes to transfer is less than the "good and merchantable" title which plaintiff agreed to convey because it is less than fee simple title to the elements of the unit.

## II. *The Unit Property Act*

The defendants specifically contend that the nature of the property interests possessed by the owners of the units of Phase I is in violation of § 2205 of the Unit Property Act which reads as follows:

The percentage of undivided interest in the common elements assigned to each unit shall be set forth in the declaration, and such percentage shall not be altered except by recording an amended declaration duly executed by all of the unit owners affected thereby. *The undivided interest in the common elements may not be separated from the unit to which such interest pertains and shall be deemed to be conveyed, leased or encumbered with the unit even though such interest is not expressly referred to or described in the deed, lease, mortgage or other instrument. The common elements shall remain undivided* and no owner may exempt himself from liability with respect to the common expenses by waiver of the enjoyment of the right to use any of the common elements or by the abandonment of his unit or otherwise and no action for partition or division of any part of the common elements shall be permitted, except as provided in § 2239 of this title. Each unit owner or lessee thereof may use the common elements in accordance with the purpose for which they are intended without hindering or encroaching upon the lawful rights of the other unit owners. The maintenance and repair of the common elements and the making of any addition or improvements thereto shall be carried out only as provided in the code of regulations.

25 *Del.C.* § 2205 (emphasis added).

The defendants contend that the possession by a unit owner of a leasehold interest in the land and a fee simple interest in all the common elements other than the land is violative of the mandate of § 2205 that "[t]he undivided interest in the common elements may not be separated from the unit to which such interest pertains." The plaintiff disagrees, contending that the purpose of § 2205 is to protect "other unit owners who are also entitled to use the common elements." (Doc. No. 15, at 28).

As a federal court sitting in diversity, the Court clearly must apply Delaware law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64,

58 S.Ct. 817, 82 L.Ed. 1188 (1938). This task "is frequently not an easy one, for [the Court] must forsake its realm of experience and assume the aspect of a court of the forum state." *Becker v. Interstate Properties*, 569 F.2d 1203, 1204 (3d Cir. 1977). The degree of difficulty of the court's task varies with the amount of guidance available from the state courts. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). For example, when the highest state court has not yet addressed an issue,[2] the federal courts may look to lower state court decisions for guidance as to how the higher court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *National Surety Corp. v. Midland Bank*, 551 F.2d 21 (3d Cir. 1977).

In the instant case, the parties have pointed to no decisions from any Delaware court, and the Court's own research has uncovered none, interpreting § 2205 of the Unit Property Act.[3] Thus, the Court is faced with the difficult task of predicting what a Delaware court would do if confronted by the novel question of law before it. *See Becker, supra*, 569 F.2d at 1205. The Third Circuit recently summarized the factors to be considered by a federal court in undertaking this task:

> A federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 633, 657, (3d Cir. March 18, 1980). *See also* C. Wright, *Law of Federal Courts*, § 59, at 270–71 (3d ed. 1976) ("In vicariously creating law for a state, the federal court may look to such sources as the Restatement of Law, treatises and law review com-

mentary, and 'the majority rule.' The federal court must keep in mind, however, that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt.").

From the sources available to me, I conclude that the Delaware Supreme Court would uphold the Phase I scheme of ownership of the condominium units and common elements under 25 *Del.C.* § 2205. First, a review of the treatises indicates that plaintiff is correct in her contention that the purpose of § 2205 is to protect the rights of other unit owners in the condominium. In 15A *Am.Jur.2d* Condominiums and Co-operative Apartments, § 41, at 871 (2d ed. 1976), it is stated:[4]

> While the transfer of a unit owner's entire interest is not restricted by statute, statutory provision has been made to prevent the splitting of the owner's interest in such a way as would prejudice the rights of the other unit owners in the condominium. Since the unit owners are co-owners of the common areas, they could, in the absence of specific contractual or statutory provisions to the contrary, compel judicial partition of the common areas. But since partition could result in the forced sale of the common areas at the instance of a disgruntled unit owner, it is obviously necessary to prevent partition apart from the situation where the building is destroyed and it is decided not to rebuild it. Statutory provision is therefore usually made that the common areas of the project shall remain undivided and that judicial partition thereof is not permitted. . . .

> A statutory provision that any transfer or conveyance of a unit or apartment shall

---

**2.** "Even when applying well-settled law, the federal tribunal must be alert to precedent." *Becker v. Interstate Properties*, 569 F.2d 1203, 1204 (3d Cir. 1977).

**3.** The Court also attempted to obtain records of the legislative history of the Unit Property Act, but its efforts were fruitless.

**4.** The Delaware Supreme Court has previously relied upon the discussion in *Am.Jur.2d* in construing another matter of condominium law. *See Nargiz v. Henlopen Developers*, 380 A.2d 1361 (Del.1977).

be presumed to transfer or convey the entire interest of the unit owner in the building insures against inadvertent splitting off of part of the unit owner's interest, as for example, separating the apartment from the right to use the common areas.

15 *Am.Jur.2d* Condominiums and Co-operative Apartments, § 41, at 871 (2d ed. 1976) (footnote omitted). *See also* Note, *Recent Statute*, 77 *Harv.L.Rev.* 777, 778 (1964) (purpose of Massachusetts condominium statute is to preserve the continuity and harmony of condominium projects by expressly prohibiting suits for partition of the common elements); Gregory, *The California Condominium Bill*, 14 *Hastings L.J.* 189, 195 (1963) (purpose of provision presuming that transfer or conveyance of a unit transfers or conveys "the entire condominium" is "to avoid inadvertent splitting of part of a condominium from the balance; for example, the apartment from the right to use the common areas.").

The Delaware statute in question, 25 *Del.C.* § 2205, provides that the undivided interest in the common elements shall be deemed to be "conveyed, leased or encumbered" with the unit, that the common elements shall remain undivided, and that no action for partition or division of any part of the common elements shall be permitted, except in the event of damage or destruction to the property under 25 *Del.C.* § 2239. The similarity between the Delaware provisions and those referred to in the excerpt from *Am.Jur.2d* dictates that considerable attention be paid to the interpretation of these statutory provisions given in the treatise. Moreover, the argument that the purpose of such legislation is to protect other unit owners and to preserve the continuity of the condominium, and not to prohibit the joint ownership of leasehold and fee simple interests in the common elements, is even stronger with respect to the Delaware statute because of its express provision that "no owner may exempt himself from liability with respect to the common expenses by waiver of the enjoyment of the right to use any of the common elements, or by the abandonment of his unit or otherwise.

. . . ." It is thus apparent that the statutory prohibition against separation of the undivided interest in the common elements from the unit is designed to prevent a unit owner from refusing to purchase an interest in a common element—for example, a swimming pool—and thereby seek to avoid liability for the maintenance of the pool, or to prevent a unit owner from retaining an interest in an element after selling his unit and his interest in all other common elements, thereby permitting him to use the facilities even after he has sold his unit. I find no support for the view, however, that a unit owner may not own a leasehold interest in one common element and a fee simple interest in all other common elements, provided his *entire* interest in the common elements is transferred along with the unit to which these interests pertain.

In 31 *C.J.S.* Estates § 147, at 277 (Supp. 1980), it is stated,

> A condominium may exist on land a part of which is held by the unit owners in fee simple, and with the remaining part being held as an estate for years appurtenant to the unit ownership.

Cited in support of this proposition is *Ackerman v. Spring Lake of Broward, Inc.*, 260 So.2d 264 (Fla.Ct.App.1972). In that case, a developer retained ownership of one of the common elements, a recreation area, and purchasers of the condominium units were required to enter into a 99-year lease agreement with the developer for the recreation area. The lease provided for an annual rent of $150. In addition, each unit owner received a warranty deed conveying fee simple title to his unit. In a suit brought by several unit owners who sought to have this lease arrangement declared invalid, the court held,

> In the instant case, part of the condominium property was submitted to condominium ownership in fee simple, but that part of the common elements designated as the recreation area was submitted to condominium ownership for a term of 99 years. The net result is that the unit

owner owns his unit in fee simple, but a part of the common elements by an estate for years. Such a result is apparently contemplated by Section 711.04(1), F.S. 1969, F.S.A. The use of both fee simple and leasehold estates in the same declaration of condominium may be somewhat awkward and confusing, but there has been no showing that such an arrangement violates the Condominium Act.[5]

The provisions of the Florida condominium act in existence at the time of the *Ackerman* decision and interpreted therein, *see* note 5 *supra*, are very similar to § 2205 of the Delaware Unit Property Act.[6] Both statutes provide that the undivided interest or share in the common elements shall not be separated from the unit and may not be conveyed or otherwise transferred without the unit, that the common elements will remain undivided, and that a suit for parti-

tion of the common elements will not lie. Given this circumstance, I believe the Delaware courts would look to the interpretation of the Florida law by the Florida courts for guidance in construing the Delaware Act. *See Director of Revenue v. Barry*, 391 A.2d 216 (Del.Super.1978) (court looks to identical Pennsylvania statute, enacted prior to Delaware's law, and interpretations thereof in construing the Delaware Realty Transfer Tax Act, 30 *Del.C.* Ch. 54).[7] The *Ackerman* decision of the Florida Court of Appeals appears to be the only Florida case to have addressed the precise issue before this Court—whether the ownership of mixed leasehold and fee simple interest in all the common elements violates the condominium law. Therefore, its holding that such a scheme of ownership is valid should be accorded great weight in the interpretation of the Delaware statute, and it

**5.** Section 711.04 of the Florida condominium act provides:

> 711.04 Condominium parcels; appurtenances; possession and enjoyment
>
> (1) A condominium parcel is a separate parcel of real property, the ownership of which may be in fee simple, or any other estate in real property recognized by law.
>
> (2) There shall pass with a unit as appurtenances thereto:
>
> (a) An undivided share in the common elements.
>
> (b) The exclusive right to use such portion of the common elements as may be provided by the declaration.
>
> (c) An exclusive easement for the use of the air space occupied by the unit as it exists at any particular time and as the unit may lawfully be altered or reconstructed from time to time, which easement shall be terminated automatically in any air space which is vacated from time to time.
>
> (d) An undivided share in the common surplus.
>
> (e) Such other appurtenances as may be provided in the declaration.
>
> (3) The owner of a unit is entitled to the exclusive possession of his unit. He shall be entitled to use the common elements in accordance with the purposes for which they are intended, but no such use shall hinder or encroach upon the lawful rights of owners of other units.

Fla.Stat.Ann. § 711.04 (West 1969) (repealed by 1976 Fla.Laws, C. 76–222, § 3 (1977); now codified at Fla.Stat.Ann. § 718.106 (West 1980)).

Section 711.05 of the Florida condominium act provides:

> 711.05 Restraint upon separation and partition of common elements
>
> (1) The undivided share in the common elements which is appurtenant to a unit shall not be separated therefrom and shall pass with the title to the unit whether or not separately described.
>
> (2) A share in the common elements appurtenant to a unit cannot be conveyed or encumbered except together with the unit.
>
> (3) The shares in the common elements appurtenant to units shall remain undivided, and no action for partition of the common elements shall lie.

Fla.Stat.Ann. § 711.05 (West 1969) (repealed by 1976 Fla.Laws, C. 76–222, § 3 (1971); now codified at Fla.Stat.Ann. § 718.107 (West 1980)).

**6.** *See* R. Powell, *The Law of Real Property*, § 633.11[4], at 809–10 (1979), in which Fla.Stat. Ann. § 711.04 and Pa.Stat.Ann. Title 68, § 700.-202 (Purdon 1969) are cited as examples of statutory provisions prohibiting the conveyance of a unit without the conveyance of the appurtenant interest in the common elements. A reading of the Pennsylvania statute, § 700.-202, reveals that it is identical to § 2205 of the Delaware Act. Unfortunately, no Pennsylvania cases interpreting this provision have been presented to the Court nor have any been uncovered by the Court's independent research.

**7.** Florida's statute was enacted in 1963, one year prior to the Delaware Unit Property Act.

is my conclusion that the Delaware courts would do so.[8]

Finally, the provisions of the Delaware Unit Property Act, read as a whole, appear to contemplate the possession by a unit owner of a leasehold interest in the land as a common element along with a fee simple interest in the other common elements. For example, 25 *Del.C.* § 2202(6) provides,

"Declaration" means the instrument by which the owner in fee simple *or lease of the property* submits it to the provisions of this chapter as hereinafter provided and all amendments thereof. (emphasis added)

"Property" is defined in § 2202(10):

"Property" means and includes the land, the building, all improvements thereon, all owned in fee simple *or under lease*, and all easements, rights and appurtenances belonging thereto which have been or are intended to be submitted to the provisions of this chapter. (emphasis added)

Section 2205 itself provides in pertinent part,

the undivided interest in the common elements may not be separated from the unit to which such interest pertains and shall be deemed to be conveyed, *leased* or encumbered with the unit even though such interest is not expressly referred to or described in the deed, *lease*, mortgage or other instrument. (emphasis added)

Although not directly applicable to the instant case, § 2240 provides that,

Nothing in this chapter shall be construed to prevent the construction of unit prop-

erties, as defined in § 2202 of this title, *upon land held under a lease* by the developer of the unit property, provided that the declaration required under § 2219 of this title shall be signed not only by the lessee, *but also by the lessor of the land who holds legal title to the land in fee simple.* (emphasis added)

Thus, the Delaware Act apparently contemplates the construction of units on leased land (§ 2240), the leasing of common elements (§ 2205), and the ownership either in fee simple or under a lease of the land, building or improvements (§§ 2202(6), (10)). The defendants argue that the Act permits a developer to lease units along with a leasehold interest in the common elements or to sell units along with a fee simple interest in the common elements, but prohibits the mixing of leasehold and fee simple interests. (Doc. No. 16, at 7). I find no support for this proposition from a reading of the Act, a review of the treatises, or from an analysis of the caselaw in other jurisdictions with similar statutes. Accordingly, I conclude that the Delaware Supreme Court would not find the scheme of ownership at Sea Colony East, Phase I Condominiums violative of 25 *Del.C.* § 2205 and will deny defendants' motion for summary judgment based on that argument.

## III.   *Defendants' Contentions Under the Contract*

▮ As noted earlier, see page 153 *supra*, there exists a factual dispute as to whether the defendants were aware of the

---

**8.** The *Ackerman* decision was subsequently recognized as good law in *Hayes v. Spring Lake Villas # 1 Ass'n*, 313 So.2d 455 (Fla.Ct. App.1975). *See also Wiley v. Berg*, 282 Or. 9, 578 P.2d 384 (1978). In that case, two individuals sold an apartment building and leased the land on which the building was located to a corporation. A declaration of intent to organize a condominium was then filed by the corporation's organizer and the apartment units were sold. A provision in the lease of the land to the corporation provided that the land could be purchased by the condominium association to be formed and that the corporation's interests as lessee could be assigned to that corporation. The deeds to the individual units also

conveyed the leasehold interest to the land. Several tenants brought suit after the individual owners of the land and the lessee corporation amended the lease changing the purchase price of the land. Although the issues before the Oregon Supreme Court were different from the one presented in the instant case, it is not insignificant that no argument was made to the Court, and certainly no indication was given in the Court's opinion, that a unit owner's mixed leasehold-fee simple interest in the common elements violated the Oregon condominium law, which contains provisions very similar to those of Delaware and Florida. *See Or.Rev. Stat.* §§ 91.500(12), 91.563 (1977).

**158**

nature of the plaintiff's interests in the unit and the common elements at the time they signed the contract of sale. The defendants contend, however, that this factual dispute concerning the intent of the parties to the contract is not a material dispute and should not preclude the granting of summary judgment. The Court disagrees.

The defendants assert that the contract of sale clearly and unambiguously defines the intent of the parties to convey fee simple title to the unit and all of the common elements. They contend, therefore, that under the parol evidence rule, the language of the contract, and not external testimony as to the intent of the parties, must govern. *See Aetna Insurance Co. v. Newton*, 274 F.Supp. 566, 571 (D.Del.1967). However, the contract does not clearly reflect the parties' intent as to whether the interest in the land to be conveyed was of a leasehold or fee simple nature. In fact, the contract is completely silent on the question of common elements. (*See* Doc. No. 8, Affidavit of Morton Hollander, Ex. I). The property is identified solely as "Sea Colony # 309 N Annapolis House and the Contents therein, Bethany Beach, Baltimore Hundred, Sussex County Delaware." While under § 2205 "the undivided interest in the common elements is deemed to be conveyed, leased or encumbered with the unit even though such interest is not expressly referred to," the contract does not address the nature of the undivided interest in the common elements to be transferred. Paragraph 5 of the contract states that "[t]itle conveyed by purchaser shall be good and merchantable," without specifying, in any way, to what property title is being conveyed. Accordingly, the factual dispute between the parties relates to a material issue—the intent of the parties to the contract—and precludes the granting of defendants' motion for summary judgment. *See Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976).

An order will be entered denying defendants' motion for summary judgment.