**Cecil D. HONEYCUTT, Plaintiff,**

v.

**John W. KENDALL, Defendant.**

**Civ. A. No. 80–75.**

United States District Court,
D. Delaware.

Oct. 22, 1982.

Timothy M. Rafferty, Hockessin, Del., for plaintiff; Eugene A. Steger, Jr., Steger & Howell, Ltd., Kennett Square, Pa., of counsel.

Robert G. Carey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action arises as an outgrowth of a transaction between an insurance broker and an insured. Plaintiff Cecil Honeycutt, a Pennsylvania resident, requested defendant John Kendall, an insurance broker, to procure an automobile insurance policy for his benefit. Due to non-payment of premium, the insurance company, United States Fire and Guaranty ("USF & G"), cancelled the insurance policy. Subsequent to cancellation, plaintiff was involved in a one-car accident resulting in significant property

damage and personal injury. Plaintiff seeks recovery against defendant for damages. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, and the amount in controversy, exclusive of costs and interest, exceeds $10,000. Before the Court is defendant Kendall's motion for summary judgment.

In order to grant a motion for summary judgment, the Court must find that there are no material facts in dispute. Fed.R. Civ.P. 56(c). Similarly, the Court must weigh the facts in a light favoring the non-moving party, drawing all reasonable inferences to support his contention. *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 883 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). Plaintiff's version of the facts can be set forth succinctly, as follows. On June 27, 1978 Honeycutt contacted Kendall with regard to an application for comprehensive and basic loss insurance on a 1974 Datsun pick-up truck. Because of occurrences not important here, defendant Kendall placed the application into the assigned risk plan which was forwarded to the assigned risk plan headquarters where plaintiff was assigned to USF & G.

USF & G returned a policy containing a payment schedule to defendant for delivery to plaintiff. Plaintiff paid defendant ninety ($90.00) dollars for the initial application. USF & G made a standard survey of plaintiff's driving record and discovered an undisclosed moving violation.[1] As a result, USF & G imposed an additional surcharge of thirty-nine ($39.00) dollars and issued notice of the surcharge on October 3, 1978. The additional payment was due on or before November 3, 1978 or the policy was subject to cancellation. Plaintiff never received the USF & G notice although it was addressed correctly. Plaintiff concedes, however, that he received a reminder from defendant dated November 1, 1978 that an insurance payment was due on November 3, 1978.

Since the surcharge was not paid, on November 29, 1978 USF & G sent plaintiff a notice of cancellation effective December 11, 1978 based on non-payment of premium. For purposes of this motion, plaintiff never received that notice. An advance copy of the notice was also sent to defendant. The copy of this cancellation notice indicates that it was received by defendant on December 5, 1978.

On December 4, 1978 plaintiff advised the Datsun had been sold and a 1977 Corvette was bought and requested insurance coverage for the same plus the addition of collision coverage. Defendant satisfied this request on December 4, 1978 by sending a memorandum to USF & G. This request was not entertained by USF & G due to the nonpayment under the existing policy but USF & G did indicate to defendant that it would continue coverage if plaintiff remitted the past-due surcharge.

On December 24, 1978 plaintiff was involved in a serious one-car accident in Pennsylvania. USF & G refused to honor a damage claim due to the cancellation.[2]

Plaintiff alleges that defendant: first, failed to notify plaintiff of the surcharge; second, failed to notify plaintiff of the cancellation; and third, failed to procure the insurance coverage requested on the Cor-

---

**1.** The violation occurred in September of 1977. Plaintiff's insurance application, completed by defendant, answered a question concerning recent past moving violations in the negative.

**2.** Plaintiff Honeycutt brought an action against USF & G seeking $15,000 in the Court of Common Pleas, Chester County, Pennsylvania, C.A. 465 (May, 1979). That action was dismissed and settled for $7,500. Plaintiff entered a Joint Tortfeasor Release so as to proceed against defendant for the sum difference of his damages. Despite this recovery which reduces plaintiff's damages, this Court retains jurisdic-

tion for two reasons: first, the plaintiff is claiming punitive damages which, along with actual damages, exceed the jurisdictional amount; and second, the amount in controversy is determined at the time an action is filed and subsequent events which reduce the recoverable amount to less than the statutory limit do not eliminate jurisdiction. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Porter v. Hollander,* 494 F.Supp. 151, 152 n. 1 (D.Del.1980).

vette. Defendant maintains: first, there was notice to the plaintiff of the surcharge; second, there is no legal duty to provide notice of the cancellation; and third, the failure to obtain the requested coverage was due to plaintiff's, not defendant's, action and plaintiff was not led to believe that coverage had been obtained.

*Duty to Provide Notice of Surcharge*

■ Defendant Kendall was operating throughout this transaction as an insurance broker as opposed to an agent. The Delaware Code defines a broker as one who acts on behalf of an insured and solicits, negotiates, or procures insurance for the insured. 18 *Del.C.* § 1715.[3] A broker's duties terminate upon delivery of the insurance policy to the insured, absent an express authorization to perform other duties.

■ Kendall fulfilled his initial duty as a broker by obtaining and delivering the USF & G insurance policy on the Datsun to Kendall. *See Mitton v. Granite State Fire Ins. Co.,* 196 F.2d 988 (10th Cir. 1952) (broker's duty completed upon delivery of policy); 16 J.A. Appleman & J. Appleman, *Insurance Law & Practice* §§ 8727, 8844 (1981) (same). Defendant Kendall did not send invoices to plaintiff for his insurance installments—rather these were sent directly to plaintiff by USF & G. Consequently, defendant was under no legal obligation to provide notice of the surcharge to plaintiff.

Despite this lack of duty, defendant did provide plaintiff with some notice that a premium over and above the ninety ($90.00) dollars previously paid was due. The November 1, 1978 memorandum stated:

This is a reminder that your auto insurance is due 11/3/78. If you have sent the premium then please disregard this correspondence.

Plaintiff submits that this somewhat cryptic notice failed to apprise him of the surcharge. While the sufficiency of this notice is disputed, it is immaterial because defendant was under no legal obligation to provide notice of the surcharge.

*Duty to Provide Notice of Cancellation*

Clearly, notice of cancellation must be provided by an insurer to an insured to be effective. Plaintiff raises the claim that a broker also has the duty to provide notice of cancellation. At the December 4, 1978 meeting concerning the transfer of insurance, defendant was not yet aware of the notice of cancellation and therefore could not have been expected to notify plaintiff of the impending cancellation. Defendant became aware of the notice on December 5, 1978 and, admittedly, did not contact plaintiff about the notice of cancellation.

■ The law does not impose a duty upon brokers to inform insureds of a notice of cancellation if the insured knew or should have known about the cancellation. Where the insurer is required to give direct notice of the cancellation, the broker is not liable for a failure to notify.[4] *See Adkins & Ainley, Inc. v. Busada,* 270 A.2d 135, 137 (D.C.App.1970); *Rovella v. Standard Accident Ins. Co.,* 121 Conn. 134, 183 A. 377 (1936); 16 J.A. Appleman & J. Appleman, *Insurance Law & Practice* § 8844, at 247 n.

---

**3.** An agent is one appointed by the insurer to solicit applications or negotiate contracts on behalf of the insurer. 18 *Del.C.* § 1702. While defendant Kendall was a Nationwide Insurance Co. agent, he determined that plaintiff Honeycutt was ineligible for Nationwide coverage due to a prior insurance policy cancellation by State Farm Insurance Co. for failure to pay premiums. Consequently, he utilized the assigned risk insurance plan acting simply as a broker.

**4.** The policy in question required USF & G to provide notice of termination to the insured by mail addressed to the last known address of the insured. This method of notice is sanctioned

by Delaware law and the assigned risk regulations. *See* 21 *Del.C.* § 2906(b)(7); Revised Delaware Automobile Insurance Plan, Ins.Reg. No. 17, § 11(a)(7) (superceded) (assigned risk plan regulation in force in 1978 provides for combined billing and notice of termination by regular mail). The current regulations require cancellation notices to be sent by regular mail to the insured and the producer of record. Regulation No. 17, § 11(a)(7)(A) (Bulletin No. 80–4). The requirements of 18 *Del.C.* § 3904 concerning cancellation by certified mail of automobile insurance policies are inapplicable to the assigned risk plan. *Thomas v. Veltre,* 381 A.2d 245, 247 (Del.Super.1977).

10 (1981).[5] Plaintiff's claim that defendant breached a duty to provide notice of cancellation is not well founded.

### Duty to Provide Notice of Failure to Obtain Insurance

Plaintiff Honeycutt asserts that defendant Kendall breached the duty to obtain insurance on the Corvette and this failure "lulled" plaintiff into the belief that such insurance had been obtained. Defendant maintains that he expeditiously requested a transfer and expansion of coverage from the Datsun to the Corvette, or the issuance of a new policy, in his December 4, 1978 memorandum to USF & G. As noted, the request was transmitted prior to Kendall's knowledge of the impending cancellation of the policy.

As a broker, Kendall's duties to the plaintiff existed until delivery of the new policy. 3 Couch 2d *On Insurance* § 25:94 at 406 (broker is agent of insured while attempting to obtain modification of existing policy). Thus, his duty to plaintiff was not extinguished by the simple request to USF & G on December 4, 1978. Arguably, when defendant learned on December 5, 1978 that a notice of cancellation had been sent and would become effective on December 11, 1978, he had a duty to inform plaintiff that the requested substitution and expansion of coverage could not be achieved. *See* 42 Am.Jur.2d *Insurance* § 175 (broker has duty to inform principal of failure to obtain insurance); *cf. Rider v. Lynch,* 42 N.J. 465, 201 A.2d 561 (1964) (notice of failure to obtain coverage must be given with reasonable dispatch).

This proposition overlooks two important points: first, the failure to obtain the requested expansion and transfer of coverage was due solely to plaintiff's failure to pay the required premiums; and second, the defendant could reasonably assume that plaintiff was aware that the account was in arrears and was about to be cancelled. With regard to the second point, defendant had notified plaintiff in early November that an insurance payment was due. More importantly, however, the notice of cancellation sent by USF & G was legally sufficient to cancel the policy[6] and defendant should not be held to a duty to inform plaintiff of something he is deemed to know. *See Adkins & Ainley, Inc. v. Busada,* 270 A.2d at 137.

Further, despite plaintiff's protestations, the record discloses no assurance by defendant that the requested insurance had been obtained. Had the defendant given such assurances or "lulled" plaintiff into believing the coverage had been obtained, the failure to obtain would be actionable. *See e.g. Adkins & Ainley, Inc. v. Busada,* 270 A.2d at 137; *Conestoga Chemical Corp. v. F.H. Simonton, Inc.,* 269 A.2d 237 (Del.Super.1970); *Luther v. Coal Operator's Casualty Co.,* 379 Pa. 113, 108 A.2d 691, 692 (1954). In this case Kendall gave no affirmative assurance of coverage.[7] He was unaware of the notice of cancellation at the December 4, 1978 meeting. Admittedly, he did not notify plaintiff of the problem in

---

5. *But cf. Foster v. Nunmaker Discount Co.,* 201 So.2d 215, 217 (La.App.1967) (duty to inform of cancellation and broker held liable for failure to notify insured, however, notice was sent to a known incorrect address).

6. Under Delaware law and established precedent, notice of cancellation of an insurance policy sent to the last known address of record of the insured is deemed sufficient. *See* 18 *Del.C.* § 3904 (cancellation by certified mail). It is unclear whether the USF & G notice was sent by certified or regular mail but this is immaterial because in 1978 notice of cancellation of an assigned risk policy could be by regular mail. Ins.Reg. No. 17, *supra* (as effective in 1978).

7. A broker may be held liable for a failure to provide relevant information. *See* 16A J.A. Appleman & J. Appleman, *Insurance Law & Practice* § 8841, n. 68 (1981). In *Gulf-Tex Brokerage v. McDade & Assoc.,* 433 F.Supp. 1015 (D.C.Tex.1977), a broker failed to inform the insured that extension of the limits of coverage of a policy might be delayed. An accident occurred during the lapse of coverage and the broker was held liable on negligence grounds. In the case at bar, however, no such negligence is evident. The policy lapsed due to the actions of the plaintiff—not the negligence of the defendant.

substituting and expanding coverage but the problem was not due to defendant's negligence or his failure to exercise requisite skill or diligence.

Nonetheless, plaintiff maintains that he requested defendant to obtain insurance—a request not limited to the transfer of coverage. Since the Court must draw all inferences in favor of the plaintiff, it cannot, at this juncture, determine that plaintiff limited his request to one simply for a transfer. This situation is distinguishable from that previously discussed because the issuance of a policy, as opposed to a modification of an existing policy, furthers the broker's duties. Since a broker has a duty to provide notice to the insured of a failure to obtain coverage, and defendant did not provide such notice, defendant may have breached its duty. Summary judgment is inappropriate because a material fact exists concerning the precise nature of the plaintiff's request. If defendant was charged with obtaining an insurance policy from any source, not simply transferring existing coverage, Kendall did not satisfy his duties as a broker. If, on the other hand, he was requested to transfer and expand coverage, he performed all functions imposed upon him by law.

*Conclusion*

For the foregoing reasons, and the presence of material facts in dispute, defendant's motion for summary judgment will be denied.