Thomas P. ANDERSON, Jr., and Kay G. Anderson, Plaintiffs,

v.

**BENEFICIAL MORTGAGE CORPORATION,** Defendant.

**Civ. A. No. 87–207.**

United States District Court, D. Delaware.

Nov. 21, 1988.

Thomas P. Anderson, Jr., and Kay G. Anderson, Glen Mills, Pa., pro se.

Bayard J. Snyder, of Phillips & Snyder, P.A., Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiffs in this action, Thomas P. Anderson, Jr. and Kay G. Anderson (the "Andersons"), seek to recover from Beneficial Mortgage Corporation ("BMC") compensatory and exemplary damages allegedly resulting from defendant's fraudulent misrepresentations and concealments in failing to grant plaintiffs financing for property purchased by the plaintiffs. Currently before the Court is defendant's motion for summary judgment. Defendant contends that the plaintiffs have failed to meet the amount in controversy limitation of $10,000 as required by 28 U.S.C.

§ 1332(a) (1982) and that plaintiffs have not incurred any monetary damages as a matter of law. The motion for summary judgment, for reasons set forth below, will be denied.

## FACTUAL BACKGROUND

On November 11, 1986, plaintiffs signed a contract to purchase property located in Glen Mills, Pennsylvania for $150,000. The property contained a vacant 200–250 year old house situated on 4.5 acres of land. On November 17, 1986, plaintiffs obtained a loan commitment from Beneficial National Corporation ("BNC"), a corporation related to the defendant but not a party to this action, for $175,000 as interim construction financing in order that repairs and maintenance could be completed on the house. In turn, plaintiffs signed a note over to BNC for $175,000, payable in full on April 29, 1987, and granted BNC a first mortgage on the property. Settlement on the property was completed on December 30, 1986.

On December 12, 1986, the Andersons applied for a permanent mortgage on the property with defendant, BMC. The Andersons paid defendant $50.00 to process the application rather than the normal fee of $240.00. The waiver of $190.00 was in exchange for plaintiffs' obtaining and supplying an appraisal of the property. Plaintiffs allege they gave a copy of the appraisal to BMC with the application. Plaintiffs had previously solicited this appraisal in connection with the construction financing. Plaintiffs also assert defendant requested a copy of the appraisal on a Federal National Mortgage Association form and that such appraisal was delivered by plaintiffs.

On February 11, 1987, plaintiffs chose to lock-in the interest rate on their pending mortgage application at the fixed rate of 9⅛%. The Andersons were advised the locked-in rate would expire in 60 days.

From February to early April, plaintiffs assert that they, along with an officer of the Beneficial National Corporation, were told by defendant that the loan application was "going smoothly" and that no problems had arisen. Plaintiffs selected Donald Wright, the same appraiser who performed

the BNC appraisal, to conduct a second appraisal for BMC. The results of the appraisal were received by BMC approximately two weeks prior to the settlement date and the expiration of the lock-in period.

Two days before the proposed April 11 settlement date, plaintiffs were informed that the loan application had been denied because the appraiser had not chosen acceptable comparable homes in making his appraisal and that Wright was not an acceptable appraiser.

After numerous meetings and conversations between the plaintiffs and defendant, defendant agreed to stay the expiration of the lock-in period and extend the settlement date until another appraisal could be completed. The retention of the lock-in period is significant because plaintiffs had locked in an interest rate for their mortgage at $9\frac{1}{8}\%$ while the lock-in rate as of mid-April approached $10\frac{1}{2}\%$.

A third appraisal was commenced on April 18, 1987. The property was valued at $220,000 with $90,000 of the $220,000 constituting the value of the land for a land to value ratio of 41%. This appraisal accorded with Donald Wright's appraisal. Wright valued the property at $250,000, the land at $100,000 for a land to value ratio of 40%. At this time the lock-in rate was 10.75%.

The plaintiffs, awaiting BMC's decision on the loan, filed a complaint on April 21, 1987, eight days prior to the date the construction loan became due, seeking specific performance of the mortgage commitment and in the alternative compensatory and punitive damages. At the same time plaintiffs petitioned the Court for a temporary restraining order. The temporary restraining order was denied and plaintiffs sought to mitigate their damages by applying to other banks for permanent mortgage financing.

Plaintiffs' attempted to mitigate damages by applying for two loans both of which were approved. Plaintiffs had the choice of a 30–year fixed rate mortgage at 10% or a 30–year adjustable rate mortgage of 7% percent with yearly adjustments of 2% never to exceed a maximum of 13%. Plaintiffs selected the latter.

In early May, defendant again rejected plaintiffs' loan application primarily because the relatively high land to value ratio exceeded the ratio demanded by the purchaser of BMC's mortgage portfolio.

As a consequence of acceptance of a mortgage through another institution, plaintiffs subsequently amended their complaint seeking only compensatory and exemplary damages. Plaintiffs assert that defendant had perpetrated fraud upon them through concealments and misstatements. Plaintiffs allege 1) defendant repeatedly assured plaintiffs while defendant was aware adverse action would be taken on the loan, 2) defendant knew of problems with the second appraisal but did not bring these problems to the attention of the plaintiffs until two days before the scheduled settlement date, and 3) plaintiffs received fraudulent verbal conditional commitments pending the results of the final appraisal.

Presently before the Court is the defendant's motion for summary judgment. Fed. R.Civ.P. 56(c). Defendant contends plaintiffs 1) do not meet the requisite jurisdictional amount of $10,000, 28 U.S.C. § 1332 (1982), to give this Court subject matter jurisdiction and that 2) plaintiffs, as a matter of law, have not suffered any damages.

■ Defendant incorrectly contests the Court's subject matter jurisdiction through a motion for summary judgment. The general rule is that a motion for summary judgment is an inappropriate vehicle for raising the question of a court's subject matter jurisdiction. *Solomon v. Solomon,* 516 F.2d 1018, 1027 (3d Cir.1975); *Dunlap v. Sears,* 478 F.Supp. 610, 611 (E.D.Pa. 1979); *Martorano v. Hertz Corp.,* 415 F.Supp. 295, 296 n. 1 (E.D.Pa.1976).

The rationale as noted in 10 C. Wright, A. Miller & C. Kane, *Federal Practice & Procedure* § 2713 (2d ed. 1985), is as follows:

> If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action. In addition,

a dismissal for want of jurisdiction has no res judicata effect and the same action subsequently may be brought in a court of competent jurisdiction. A summary judgment on the other hand, is on the merits and purports to have a res judicata effect on any later action. (Footnotes omitted).

Use of wrong procedural motion may be overlooked on these facts. *See Martorano*, 415 F.Supp. at 296 (issue of lack of subject matter jurisdiction raised in a summary judgment motion treated as if it had been asserted in a Rule 12(b)(1) motion pursuant to Rule 12(h)(3)); *Dunlap*, 478 F.Supp. at 611 (summary judgment motion attacking court's subject matter jurisdiction treated as a suggestion courts lack jurisdiction of subject matter). The Third Circuit appellate court has given its blessing to overlooking defendant's procedural error. *See Solomon v. Solomon*, 516 F.2d at 1027 ("lack of subject matter jurisdiction should be raised and adjudicated by a motion to dismiss, not a motion for summary judgment").

BMC seeks dismissal of plaintiffs' claim based upon their alleged failure to meet the requisite jurisdictional limit of $10,000. 28 U.S.C. § 1332(a) (1982). BMC argues that the actual monetary damage suffered by the Andersons at the time of the complaint [1] was the additional cost incurred by the plaintiffs in finding substitute financing. Thus, according to BMC, total compensatory damages would equal only the fees incurred in finding substitute financing (i.e., $525.00) and the additional interest expense incurred by plaintiffs while seeking replacement financing (i.e., $128.15).[2] Additionally, BMC argues that any punitive damages awarded by the Court would necessarily have to bear a rational relationship to the actual damage award and, in the instant case, sufficient punitive damages to place plaintiffs' claim in excess of $10,000 would not be reasonable as a matter of law.[3]

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court of the United States stated that in order to gain dismissal for want of jurisdiction, "the sum claimed by plaintiff controls if the claim is apparently made in good faith." *Id.* The Court stated that "good faith" was not properly defined as the "inability of the plaintiff to recover an amount adequate to give the court jurisdiction." *Id.* at 289, 58 S.Ct. at 590. Also, good faith was not determined by the presence or absence of a valid defense to the claim. *Id.* Rather the Court found that a sum claimed was not made in good faith if, from the face of the pleadings or from the proofs, a legal certainty exists that the plaintiff was never entitled to recover the jurisdictional amount required by law. *Id.* at 289, 58 S.Ct. at 590. Finally, the Court held that the amount in controversy is determined at the time the action is filed. Any events or defenses occurring subsequent to filing will not oust the jurisdiction of a court. *Id.* at 289, 290, 58 S.Ct. at 590, 591. *Nationwide Mutual Fire Insurance v. T & D Cottage Auto*, 705 F.2d 685, 687 (3d Cir. 1983); *Wade v. Rogala*, 270 F.2d 280 (3d Cir.1959); *Honeycutt v. Kendall*, 549 F.Supp. 802, 804 n. 2 (D.Del.1982); *Porter v. Hollander*, 494 F.Supp. 151, 152 n. 1 (D.Del.1980).

The Court must find the plaintiffs incapable, to a legal certainty, of recovering the jurisdictional amount. The Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Millipore Corp. v. Univ.*

---

1. In their initial complaint, plaintiffs sought specific performance as well as compensatory and punitive damages. Upon receiving substitute financing, plaintiffs amended their complaint by eliminating the claim for specific performance.

2. The additional interest expense constitutes the 66 days of interest payments to BNC while plaintiffs sought additional financing less the rate plaintiffs would have paid BMC during this time.

3. Under Delaware law, the award of punitive damages may not be disproportionate to the award for compensatory damage. *See Reynolds v. Willis*, 58 Del. 368, 209 A.2d 760, 764 (1965); *Valley Forge Insur. Co. v. Jefferson*, 628 F.Supp. 502, 506 (D.Del.1986); *Walczak v. Healy*, 280 A.2d 728, 729 (Del.Super.1971).

*Patents, Inc.*, 682 F.Supp. 227, 231 (D.Del. 1987) (citing *Mortenson v. First Federal Savings & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir.1977). A dispute over material facts will not preclude the Court from making this determination. *Id.* In short, no presumptive truthfulness attaches to plaintiffs' allegations. *Id.* Accordingly, the Court may consider evidence beyond the pleadings, including affidavits, motions, depositions and other proof in making its determination. *Mortenson*, 549 F.2d at 891; *Dunlap v. Sears*, 478 F.Supp. 610, 611 (E.D.Pa.1979); *Nguyen v. United States Catholic Conference*, 548 F.Supp. 1333, 1336 (W.D.Pa.1982). The plaintiffs bear the burden of making this showing in a case originally brought in federal court. *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Mortenson v. First Federal*, 549 F.2d 884, 891 (3d Cir. 1977); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3702 (2d ed. 1985).

■ While it is clear, the appropriate measure of damages is the difference between the amount plaintiffs are paying the substitute financier and what they would have paid the defendant, the defendant has failed to include in its calculation of damages the costs of additional interest accruing after the date plaintiffs filed their complaint. Plaintiffs sought a $189,000 30-year mortgage at a fixed rate of 9⅛%. Upon rejection, plaintiffs partially mitigated their damages by obtaining a variable rate mortgage whose terms provided for a loan of $189,000 for 30 years with an initial variable rate of 7%. This loan provided for yearly adjustments of up to 2% with a maximum of 13%. Potentially, a fact finder could conclude plaintiffs' damages to include the present value of additional interest expense with a potential of 3⅞% per year commencing the fourth year of the mortgage, as well as the costs associated with obtaining replacement financing.[4] Thus, damages may exceed the jurisdictional amount and the value of this lawsuit to plaintiffs does not fail the legal certainty test. Accordingly the Court finds plaintiffs have satisfied the jurisdictional amount component of 28 U.S.C. § 1332. *See St. Paul Mercury*, 303 U.S. at 289, 58 S.Ct. at 590 (it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal); *Gullberg v. Rizzo*, 331 F.2d 557, 561 (3d Cir.1964) (claim will only be dismissed where it appears to a legal certainty that it cannot possibly reach the requisite level); *Wade v. Rogala*, 270 F.2d 280, 285 (3d Cir.1959) (court must be convinced plaintiff was never entitled to the jurisdictional amount).

In its second argument for dismissal, defendant argues that plaintiffs have not suffered any damages as a matter of law.[5] This argument is without merit. As the foregoing discussion indicates, a factual issue exists as to the damage plaintiffs have suffered. The ability of the plaintiffs to convince the fact finder of (presumably by expert testimony) actual injury, based on future fluctuations in interest rates, is an issue that cannot be decided today.[6]

An order will be entered denying defendant's motion for summary judgment.

---

**4.** The Court believes intuitively that damages could exceed $10,000. Neither plaintiffs nor the defendant has placed on the record a schedule calculating the present value of all potential damages.

**5.** Defendant's argument, in part, relies on Thomas Anderson's Deposition, Dkt. 64A (App. 16), where Anderson stated that the total actual financial damages suffered by plaintiffs were the cost of the two additional mortgage applications. The Court infers from plaintiff's statement no more than plaintiff's assessment of his additional out-of-pocket expenses caused by defendant's refusal to enter into a mortgage agreement.

**6.** The Court, in its decision today, does not reach defendant's contentions as to the validity and amount of punitive damages available to the plaintiffs and to the ability of the defendant to offset plaintiffs' damages with savings resulting from the substitute financing.